Phillip L. FOREMASTER, et al., Plaintiffs,

v.

CITY OF ST. GEORGE, Defendant.

WASHINGTON COUNTY MINISTERIAL ALLIANCE, et al., Plaintiffs,

v.

CITY OF ST. GEORGE, Defendant.

Civ. No. C85–1181G.

United States District Court, D. Utah, C.D.

Dec. 18, 1987.

Brian Barnard, Salt Lake City, Utah, for plaintiffs.

Ted Shumway, St. George, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

**J. THOMAS GREENE, District Judge.**

These consolidated cases have been before the court on several previous occasions in connection with plaintiffs' claims that partial defrayal of the cost of nighttime lighting of the LDS Temple at St. George, Utah by the City of St. George through issuance of a credit on the electrical bill was in violation of the Establishment Clause of the United States Constitution, and that the use of a logo on City property by the City which depicted the Temple also was in violation of the Constitution. In previous action, this court dismissed the Foremaster complaint as to the so-called electrical subsidy/credit issue (hereafter "electrical subsidy") for lack of standing, and dismissed the Ministerial plaintiffs' complaint as to that issue because of mootness. (Order dated February 2, 1987.) Also, this court previously denied motions for summary judgment with reference to claimed unconstitutional depiction of the LDS Temple on the St. George City logo. *Foremaster v. City of St. George*, 655 F.Supp. 844 (D.Utah 1987). The parties now have filed cross motions to dismiss as to the logo aspect of the case, and have submitted that matter for decision. Based upon the record before the court, defendant's motion is now granted and the actions are dismissed as to the logo issue for the reasons set forth in the court's published opinion.

The matter is now before the court on plaintiffs' motions for attorney fees and costs. Plaintiffs urge that attorneys fees should be awarded notwithstanding dismissal of the actions because they were "catalysts" and should be determined to be "prevailing parties" for award of attorneys fees pursuant to 42 U.S.C. § 1988 under the doctrine of *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978). This court contemporaneously herewith has made and entered Findings of Fact and Conclusions of Law after hearings and extensive review of the evidence received and the legal memorandums which were submitted.

### A. *Legal Principles*

In formulating the "catalyst" test, the *Nadeau* court posed "two critical questions" for determination of whether plaintiffs are prevailing parties as to issues resolved without direct judicial action. The first question was said to be one of fact, dependent upon whether plaintiffs can establish that their suit was "causally related to the defendants' actions which improved their condition"; the second question was said to be one of law, i.e., whether defendants' conduct is "required by law." *Id.* at 281. In defining the causation requirement, the Tenth Circuit has said:

In addition, plaintiff's conduct, as a practical matter, must have played a *significant role* in achieving the objective. ... This causation can be the initial catalyst in producing action, or can be the constant prodding that motivates a defendant to go further than it otherwise would have.

*Chicano Police Officer's Association v. Stover,* 624 F.2d 127, 129–130 (10th Cir. 1980) (emphasis added). The two-part catalyst test was adopted and utilized by the Tenth Circuit in *Gurule v. Wilson,* 635 F.2d 782 (10th Cir.1980); *Operating Eng. Loc. U. No. 3 of Inten. Union v. Bohn,* 737 F.2d 860, 863 (10th Cir.1984); *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1473 (10th Cir.1985); and *Supre v. Ricketts, et al.,* 792 F.2d 958 (10th Cir. 1986). In *Ricketts,* the test was formulated as follows:

> The plaintiff must demonstrate that his lawsuit is linked causally to the relief obtained, i.e. the suit must be a "substantial factor or a significant catalyst" in prompting the defendants to act or cease their behavior. He must also demonstrate that the defendant's conduct in response to the lawsuit was required by the Constitution or federal law, i.e. the defendant's action must be legally required.

792 F.2d at 962.

B. *Application in This Case*

1. The Logo

Under this court's prior ruling, none of the plaintiffs were prevailing parties as to the logo issue because the principal or primary effect of the logo is secular, neither advancing nor inhibiting religion under the "effects" prong of *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), consistent with *Friedman v. Board of County Commissioners of Bernalillo,* 781 F.2d 777 (10th Cir.1985). Accordingly, the second prong of the *Nadeau* test was not met because removal of the logo from City property, even if in response to the lawsuit, was not "required by law."

2. The Electrical Subsidy

a. *Plaintiff Foremaster*

■ As to the Temple lighting issue, Foremaster is not a prevailing party because he had no standing and hence did not and could not receive relief on the merits of his claim. *Valley Forge College v. American United,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). In *Valley Forge,* the Supreme Court held that respondents had no standing to sue as federal taxpayers, and that under prior applicable precedents they also had no standing as citizens to assert an abstract injury because of nonobservance of the Constitution. As to the claim that plaintiffs had suffered "injury in fact" by violation of a "personal constitutional right" created by the Establishment Clause, the court said that plaintiffs

> fail to identify any personal injury suffered *as a consequence* of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art III, even though the disagreement is phrased in constitutional terms. It is evidence that respondents are firmly committed to the constitutional principle of separation of church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.

*Id.* at 485–86, 102 S.Ct. at 765–66. The court went on to hold: "We simply cannot see that respondents have alleged an injury of any kind, economic or otherwise, sufficient to confer standing." *Id.* at 486, 102 S.Ct. at 766.

The same principles govern the case at bar, except that in this case Foremaster hasn't even a colorable claim of right to sue as a taxpayer because he paid no taxes for lighting the Temple, being a nonresident of St. George, Utah. Since Foremaster lacks standing, no relief on the merits of his claim could be granted. Nor could Foremaster have forced relief without the benefit of a formal judgment, such as through a consent decree or settlement. The Supreme Court recently has noted that to prevail in court at least some relief on the merits of plaintiff's claim must be granted. In *Hewitt v. Helms,* —— U.S. ——, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), a plaintiff received an "interlocutory ruling that his complaint should not have been dismissed for failure to state a constitutional claim." The court noted that such an interlocutory order, even though stating

the law favorably to the plaintiff "is not the stuff of which legal victories are made," and said:

> In order to be eligible for attorney's fees under § 1988, a litigant must be a "prevailing party." Whatever the outer boundaries of that term may be, Helms does not fit within them. Respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before the can be said to prevail.

*Id.* 107 S.Ct. at 2675.

Further, since Foremaster was found to lack standing he may not "prevail" under the catalyst test. In *Hewitt,* plaintiff had claimed, in the alternative, that a hearing was required to determine whether Helms' lawsuit had in fact caused a change in the defendant's conduct. With respect to this claim the Supreme Court said:

> We need not decide the circumstances, if any, under which this "catalyst" theory could justify a fee award under § 1988 because even if Helms can demonstrate a clear causal link between his lawsuit and the State's amendment of its regulations, and can "prevail" by having the state take action that his complaint did not in terms request he did not and could not get redress from promulgation of the informant-testimony regulations. When Directive 801 was amended Helms had long since been released from prison. Although he has subsequently been returned to prison, and is presumably now benefiting from the new procedures (to the extent that they influence prison administration even when not directly being applied), that fortuity can hardly render him, retroactively, a "prevailing party" in this lawsuit, even though he was not such when the final judgment was entered.

*Id.* at 2677. In *Hewitt,* even if the defendant did change its conduct as a result of plaintiff's lawsuit, plaintiff "did not and could not get redress from [the change]," *Id.,* because he had been released from prison, and his claim therefore was moot. Accordingly, under the first prong of the *Nadeau* test the plaintiff could not show

"actions which improved [his] condition" even if such were "casually related." In this case Foremaster faces a similar problem. Since Foremaster did not sustain "injury in fact" sufficient to confer standing, he did not and could not benefit or get redress from a change in St. George's conduct. Accordingly, whether or not Foremaster's suit in fact caused or contributed to any change, he may not be considered a prevailing party.

### b. Ministerial Plaintiffs

■ The Ministerial plaintiffs fail the first prong of the *Nadeau* test as formulated by the Tenth Circuit in that their lawsuit was not a substantial factor or a significant catalyst in causing termination of the electrical subsidy. It is manifest that by the late date the Ministers finally filed their lawsuit, November 3, 1986, the electrical subsidy already was terminated, subject only to confirmation or ratification by the City Council, a majority of the members of which had already approved the action informally. From the totality of facts and circumstances, this court has found that the final termination result came about, and would have occurred, without the action of the Ministers. Since the result would have happened without the Minister's action, it cannot be said that they "caused" the result.

We need not reach or rule upon the second prong of the *Nadeau* test as to the electrical subsidy issue, i.e., whether defendant's conduct was "required by law." Although it is clear that termination of the subsidy was fully accomplished prior to the hearing on December 30, 1986, when the cases were dismissed, this court retained jurisdiction in the event that the electrical subsidy should be reinstated or again be made available by the City to the LDS Temple. No suggestion is here made by counsel that the practice has been resumed, but the court continues to retain jurisdiction in the matter.

For the aforesaid reasons, plaintiffs' motion to tax attorneys fees and costs is denied, and defendant's motion denying attor-

neys fees is granted as against all plaintiffs.

IT IS SO ORDERED.