**Phillip L. FOREMASTER, Plaintiff–Appellant,**

v.

**CITY OF ST. GEORGE, a political subdivision of the State of Utah, Defendant–Appellee.**

No. 88–1235.

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1989.

Rehearing Denied Sept. 28, 1989.

Brian M. Barnard, Salt Lake City, Utah, R. Clayton Huntsman, St. George, Utah, C. Dane Nolan, Utah Legal Clinic Foundation, Salt Lake City, Utah, for plaintiff-appellant.

T.W. Shumway, St. George City Atty., Steven E. Snow, Snow, Nuffer, Engstrom & Drake, St. George, Utah, James E. Mitchem, Mitchem & Mitchem, Denver, Colo., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and WRIGHT * and BALDOCK, Circuit Judges.

* Honorable Eugene A. Wright, United States Senior Judge for the Ninth Circuit, sitting by designation.

EUGENE A. WRIGHT, Senior Circuit Judge.

We consider here the legality of a subsidy given by a municipal utility to a Mormon temple and the legality of a city's use of a logo depicting the Mormon temple.

## BACKGROUND

With a population of 11,350 in 1980, St. George is the largest city in southern Utah. Local tradition holds that Brigham Young dedicated the spot where the St. George Temple of the Church of Latter Day Saints now stands.[1] This was the first Mormon temple completed in the West. Its lightened sandstone color and interesting architecture add a "striking feature" to the landscape. James E. Talmage, *The House of The Lord* (1976) at 179. A visitors center is located on the public grounds surrounding the Temple. 263,291 persons toured the center in 1985.

Since 1942, the Utility Department of the city has helped defray the cost of exterior lighting of the Temple. Each month the City issued a credit on the temple's electric bill, in effect paying for its late night illumination. In later years this credit was approximately $180 per month.

The City also has used an official logo depicting the temple. The upper half contains a setting sun, a cluster of grapes and the motto "Where the Summer Sun Spends the Winter." The lower half contains a hill with the word "Dixie", a golf course and a sketch of the temple. (See Appendix). The City displays the logo on a plaque in the main foyer of City Hall, on two directional signs near the public parking lot of the building, and on about 85 or two-thirds of its vehicles.

In October 1985, Foremaster brought this action alleging that the subsidy and logo violated the Establishment Clause of the First Amendment. To reduce tension in the community, the City Council terminated the electric subsidy in November 1986. Finding that he lacked standing, the

1. Members of the Church of Jesus Christ of Latter–Day Saints are commonly referred to as "Mormons" or members of the "LDS" faith.

district court dismissed the portion of Foremaster's complaint that addressed the subsidy.[2] It also denied his motion for attorneys fees. *Foremaster v. City of St. George*, 687 F.Supp. 548, 551–52 (D.Utah 1987).

In February 1987, the court denied his motion for summary judgment on the logo issue. *Foremaster v. City of St. George*, 655 F.Supp. 844, 852 (D.Utah 1987). In December, it dismissed his complaint on the use of the logo, finding that it did not violate the Establishment Clause. 687 F.Supp. at 549.

Foremaster appeals the court's ruling that he lacked standing to challenge the electric subsidy and the denial of his request for attorneys fees. He also appeals the court's finding that the use of the logo does not violate the Establishment Clause. We have jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

### I. Electric Subsidy

We decide first whether the plaintiff Phillip Foremaster had standing to challenge the subsidy and, if so whether he prevailed for purposes of attorneys fees under 42 U.S.C. § 1988.

### A. *Standing*

■ Article III requires that a litigant have standing to bring a federal claim. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). At a minimum, a plaintiff must establish a personal stake in the outcome sufficient to assure the "concrete adverseness" of the issue. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1961).

To demonstrate standing, a plaintiff must allege actual or threatened personal injury, fairly traceable to the defendant's

unlawful conduct and likely to be redressed by a favorable decision of the court. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge*, 454 U.S. at 472, 102 S.Ct. at 758; *Bell v. Little Axe Ind. School Dist. No. 70*, 766 F.2d 1391, 1398 (10th Cir.1985).

In addition to the Article III requirements, the Court demands that the plaintiff assert his own rights, not those of a third party; his claim not be a "generalized grievance more appropriately addressed in the representative branch"; and his complaint fall within the zone of protection intended by the law. *Allen*, 468 U.S. at 751, 104 S.Ct. at 3324; *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759.

The alleged injury must be an "injury in fact, economic or otherwise." *Assoc. of Data Processing Service Org. Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1969). It must be "distinct and palpable," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1978) (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)), and "real and immediate," not abstract, conjectural or hypothetical. *Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983).

Foremaster alleged that he suffered economic injury because the subsidy caused him to pay higher rates for electricity. The district court found that because he did not have an electric utility account with the City he could not have suffered economic harm. We disagree.

He suffered a "distinct and palpable" injury. Revenue from the sale of electricity helped subsidize the lighting of the Mormon temple. To the extent that this subsidy diminished total revenues for the City's Utility Department, the Utility Department and the purchasers of municipal electricity are less well off and those purchasers may very well pay higher rates.[3]

---

**2.** The court consolidated Foremaster's complaint with a suit brought by an alliance of non-Mormon ministers. It dismissed the alliance's complaint on mootness grounds, finding that it was filed after the City terminated the subsidy. The alliance did not appeal.

**3.** The Utility Department relies solely on revenues from the sale of power and receives no

Foremaster bought electric power. For over two years before April 1985, he maintained an electric utility account with the City. From April 1985 to June 1986, he lived in a mobile home in the City and paid a monthly rental fee that included electricity. He then lived in an apartment until August 1987, paying his roommate half of the electric bill. He also leased office space for his law practice which included payments for electricity. *Cf. Singleton v. Wulff,* 428 U.S. 106, 113, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1975) (physicians have standing to challenge constitutionality of abortion regulations because regulations had an economic impact on their practice). Foremaster suffered an economic injury.

The alleged injury must also be fairly traceable to the challenged action, *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1975); *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205; that is, standing requires a showing of causation. *Allen,* 468 U.S. at 752, 104 S.Ct. at 3325. Foremaster's injury can be traced to the subsidy. Had the City collected the cost of free electricity provided to the temple, the revenues of the Utility would have been enhanced, eliminating the need for purchasers of electricity, including Foremaster, to pay for the amount used by the temple.

Standing requires that a favorable court ruling would likely result in actual relief from the injury. *Allen,* 468 U.S. at 751, 753 n. 19, 104 S.Ct. at 3324, 3325 n. 19; *Simon,* 426 U.S. at 38, 41, 96 S.Ct. at 1924, 1925. An injunction to stay payment of the City's subsidy would have redressed Foremaster's injury.

We conclude that he suffered economic harm from the City's electric subsidy to the temple and had standing to challenge it.[4]

### B. *Attorneys Fees*

Forty-two U.S.C. § 1988 provides attorneys fees to a "prevailing party." Even

though there was no final judicial determination, Foremaster requested fees because the City terminated the subsidy. The district court found incorrectly that he did not prevail because he lacked standing.

■ A plaintiff may prevail in the absence of a judicial determination on the merits. *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1979). In such circumstances, we have adopted the catalyst test to determine prevailing party status for attorneys fees. A plaintiff must show "(1) that [the] lawsuit is causally linked to securing the relief obtained, and (2) that the defendant's conduct in response to the lawsuit was required by law." *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1473 (10th Cir.1985) (citing *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978)); *Luethje v. Peavine School Dist. of Adair County,* 872 F.2d 352, 354 (10th Cir.1989).

■ The lawsuit need not have been the sole reason for prompting the City to terminate the electric subsidy but must have been a "substantial factor or a significant catalyst." *Supre v. Ricketts,* 792 F.2d 958, 962 (10th Cir.1986); *Luethje,* 872 F.2d at 354 (defendant's change in policy was "to quell the disharmony caused by plaintiff's complaints"). The district court found specifically that the City Council terminated the subsidy to reduce tension in the community and to save time and expense of litigating Foremaster's lawsuit. The finding was not clearly erroneous.

The catalyst test also requires that Foremaster show that he would have prevailed on the merits. He alleged that the electric subsidy violated the Establishment Clause. We review *de novo* the legal basis for terminating the subsidy. *See Ricketts,* 792 F.2d at 961.

■ The Establishment Clause mandates complete government neutrality toward religion. *Wallace v. Jaffree,* 472 U.S. 38, 60, 105 S.Ct. 2479, 2491, 86 L.Ed.2d 29 (1985).

---

supplement from the City's tax revenues. The City Council controls the Department, however.

4. Because we find standing due to direct economic injury we need not address Foremaster's arguments for standing based on taxpayer status and non-economic injury.

It proscribes "sponsorship, financial support, and active involvement of the sovereign in religious activity." *School Dist. of City of Grand Rapids v. Ball*, 473 U.S. 373, 381, 105 S.Ct. 3216, 3221, 87 L.Ed.2d 267 (1985) (citing *Comm. for Public Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 772, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948 (1973)); *see also Everson v. Bd. of Educ.*, 330 U.S. 1, 15–16, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1946) (no state "can pass laws which aid one religion, aid all religions or prefer one religion over another").

Constitutional scrutiny requires that we apply the three-part test first articulated in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The government's action is permissible only if it meets three conditions: (1) it must have a secular purpose; (2) its primary effect must be one that "neither advances nor inhibits" religion; and (3) it must not foster an excessive governmental entanglement with religion. *Id.; Bell*, 766 F.2d at 1402; *Friedman v. Bd. of County Comm'rs of Bernallilo County*, 781 F.2d 777, 780 (10th Cir.) (en banc), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1985).

■ We need not consider the first and third parts of the *Lemon* test because the electric subsidy fails the second requirement. In *Grand Rapids*, the Supreme Court held that a school district's program to supplement teaching in non-public schools impermissibly subsidized religious institutions. 473 U.S. at 392, 105 S.Ct. at 3227. A governmental subsidy directed at religious institutions and not required by the Free Exercise Clause conveys a message of endorsement. *Texas Monthly, Inc. v. Bullock*, —— U.S. ——, 109 S.Ct. 890, 899–900, 103 L.Ed.2d 1 (1989) (Brennan, J.) (state sales tax exemption for periodicals published or distributed by a religious faith violates Establishment Clause). *Cf. Bowen v. Kendrick*, —— U.S. ——, 108 S.Ct. 2562, 2577, 101 L.Ed.2d 520 (1988) (statute authorizing government subsidy to religious or-

ganizations for *non-religious* social services does not violate Establishment Clause).

The electric subsidy given by the City impermissibly subsidized a religious institution. The City gave no other church such a subsidy. It conveyed a message of City support for the LDS faith. *See Grand Rapids*, 473 U.S. at 397, 105 S.Ct. at 3229.

Because we conclude that the Constitution required the City to terminate the electric subsidy, Foremaster prevailed for purposes of attorneys fees under 42 U.S.C. § 1988.

## II. Municipal Logo

■ We next consider the legality of the city's use of a logo depicting the local Mormon temple. Before reaching this issue, we must determine if Foremaster has standing to challenge the constitutionality of the logo. We find that he alleged sufficient non-economic injury to confer standing and that his move from St. George did not cause a loss of standing.

### A. Standing

■ Again, we consider the constitutional requirement that the plaintiff allege an actual or threatened personal injury.[5] Standing under the Establishment Clause may be predicated on non-economic injury. *Valley Forge*, 454 U.S. at 486, 102 S.Ct. at 766; *see e.g., United States v. SCRAP*, 412 U.S. 669, 686–687, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973) (discouraging use of recyclable materials and adversely affecting the environment sufficient harm); *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153–154, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970) (recognizing that "aesthetic, conservational, and recreational" injury is sufficient).

When alleging non-economic injury, the Supreme Court requires that the plaintiffs be "directly affected by the laws and practices against which their complaints are directed." *Valley Forge*, 454 U.S. at 486 n. 22, 102 S.Ct. at 766 n. 22 (quoting *Abington School District v. Schempp*, 374 U.S.

5. We need not discuss taxpayer standing because Foremaster did not allege misuse of municipal funds. *See Flast v. Cohen*, 392 U.S. 83,

102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968); *Freedom from Religion v. Zielke*, 845 F.2d 1463, 1470 (7th Cir.1988).

203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963)).

In *Valley Forge,* the petitioners claimed that the government's conveyance of property to a Christian college violated the Establishment Clause. The petitioners were residents of Maryland and Virginia who learned of the transfer through news releases. None alleged that they would use the property located in Pennsylvania, but they contended that the transfer deprived them of the fair use of their tax dollars. The Court found that they lacked standing because they "fail[ed] to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error, other than the psychological consequences presumably produced by observation of conduct with which one disagrees." *Valley Forge,* 454 U.S. at 485, 102 S.Ct. at 765 (emphasis in original).

The circuit courts have interpreted *Valley Forge* in different ways. The Seventh Circuit requires that a plaintiff allege that a municipality's action offends him and that he has altered his behavior as a consequence of it. *See e.g., Freedom From Religion v. Zielke,* 845 F.2d 1463 (7th Cir. 1988) (residents had no standing to challenge Ten Commandments display in city park because they did not allege a change in behavior); *ACLU v. City of St. Charles,* 794 F.2d 265 (7th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 458, 93 L.Ed.2d 403 (1986) (mere fact that display of lighted cross on public property offends plaintiff could not confer standing; he must allege that he altered his behavior to avoid the cross).

In contrast, the Sixth and Eleventh Circuits find standing based on an allegation of direct personal contact with the offensive action alone. *See e.g., Saladin v. City of Milledgeville,* 812 F.2d 687 (11th Cir. 1987) (standing because plaintiffs were confronted directly by presence of word "Christianity" on city seal); *Hawley v. City of Cleveland,* 773 F.2d 736 (6th Cir.1985) *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986) (standing because plaintiffs alleged sectarian use of public property that impairs their use and enjoy-

ment of property); *ACLU v. Rabun County,* 698 F.2d 1098 (11th Cir.1983) (although plaintiffs' underlying motivation could be described as a spiritual belief or a commitment to separation of church and state, they had demonstrated an individualized injury other than a mere psychological reaction).

We find particularly persuasive the Sixth Circuit's reasoning in *Hawley.* There, the plaintiffs claimed that the City violated the Establishment Clause by leasing space to a church for an airport chapel. The plaintiffs alleged that "the presence of a sectarian chapel impair[ed] their use and enjoyment of the public facility." *Hawley,* 773 F.2d at 739. In contrast to *Valley Forge,* the court found that the plaintiffs used the airport frequently and resided either in the city or county where it was located. Interpreting *Rabun* it said: "[a] plaintiff challenging sectarian use of public property for impairing his actual use and enjoyment of that property has standing to challenge the impermissible activity." *Hawley,* 773 F.2d at 740.

Although we have not decided if a plaintiff must allege a change in his behavior to find standing, two of our cases are helpful. In an opinion before *Valley Forge, Anderson v. Salt Lake City Corp.,* 475 F.2d 29, 31 (10th Cir.), *cert. denied,* 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124 (1973), residents sought to remove a granite monument of the Ten Commandments from the grounds of the city-county courthouse. We found standing to challenge the use of public property for religious purposes and did not require that the plaintiffs allege a change in their behavior. *Id.*

In *Bell v. Little Axe Ind. School Dist. No. 70,* 766 F.2d 1391, 1398 (10th Cir.1985), we found that parents had standing to complain of religious meetings at their children's school. Relying on *Valley Forge,* we required that they allege a direct, personal injury, but did not require a change in behavior. *Id.*

Foremaster's allegations of direct, personal contact suffices as non-economic injury. He claimed that "the visual impact of seeing that Temple on a daily basis as part

of an official emblem ... has and continues to greatly offend, intimidate and affect me." Although he did not contend he changed his behavior, he did allege that the presence of the religious logo in the City Hall offended and intimidated him. His direct personal contact with offensive municipal conduct satisfied *Valley Forge.*

■ We next consider if Foremaster lost his standing by moving from St. George. In *Saladin v. City of Milledgeville,* 812 F.2d 687 (11th Cir.1987), the plaintiffs claimed that the city seal with the word "Christianity" denigrated them. Regardless of the fact that some plaintiffs lived outside the city, the court found standing because they received city stationery with the seal and were "directly affronted by the presence of the allegedly offensive word on the city seal." *Id.* at 693.

Although Foremaster lives outside the city, he has frequent and close connection with it. He works within the city and his affidavit indicates that he is directly confronted by the logo on a daily basis, given the city's display of the logo on many of its vehicles, its stationery and within and nearby City Hall. Given this pervasive contact, *see Friedman,* 781 F.2d at 782, his current residence outside the city does not defeat his standing.

### B. *Establishment Clause*

■ Because the district court relied on material outside the pleadings, we treat its dismissal as a summary judgment. *See Torres v. First State Bank of Sierra County,* 550 F.2d 1255, 1257 (10th Cir. 1977).

Again, we address the second prong of the *Lemon* test inquiring if the primary effect of the City's logo is to advance or inhibit religion. The district court found that the illustration of the St. George temple on the City's logo did not have the primary effect of endorsing the LDS church. *Foremaster,* 655 F.Supp. at 852. Finding a genuine issue of material fact,

we remand for trial on the question of the logo's primary effect.

The effects prong asks "whether, irrespective of the government's actual purpose, the practice ... conveys a message of endorsement or disapproval." *Lynch v. Donnelly,* 465 U.S. 668, 687, 104 S.Ct. 1355, 1366, 79 L.Ed.2d 604. "Implicit symbolic benefit is enough, it need not be material and tangible advancement." *Friedman,* 781 F.2d at 781. We inquire what an average observer would perceive when viewing the action of the City. *See County of Allegheny v. American Civil Liberties Union,* —— U.S. ——, 109 S.Ct. 3086, 3103, 106 L.Ed.2d 472; *Friedman,* 781 F.2d at 781.

In *Allegheny,* the Supreme Court's most recent decision discussing the effects prong of the *Lemon* test, the Court focused on the "particular physical setting" of the object.[6] *Allegheny,* 109 S.Ct. at 3103. The Court stated that its task was to determine whether the display in its "particular physical setting" had the effect of endorsing or disapproving religious beliefs. *Allegheny,* 109 S.Ct. at 3103. It also considered the availability or non-availability of secular alternatives. *Id.* at 3114.

We find a genuine issue of material fact as to what an average observer would perceive when viewing the City logo. Mormon temples are central to both religious beliefs and proselytizing efforts. *Foremaster v. City of St. George,* 655 F.Supp. 844, 847–48 (D.Utah 1987). The Washington County Ministerial Alliance claimed that the "representation of the LDS Temple of the city logo/seal lends the power, prestige, endorsement and financial support of the city of St. George to one church to the exclusion of others." *Foremaster v. City of St. George,* 655 F.Supp. 844, 848 (D.Utah C.D. 1987). It also claimed that the other churches in the City are "attractive, beautiful, sacred" and visited by tourists. *Id.* Foremaster contended that "[t]he St. George LDS Temple is the universally iden-

---

**6.** The majority opinion endorses the *Lemon* test, but Justice Kennedy's dissent, with Justices Rehnquist, White and Scalia joining, questions

the test's utility and proposes an alternative analysis. *Allegheny,* 109 S.Ct. at 3134–35.

tified symbol of Mormonism as practiced in the St. George area."

The LDS Church News says:

These buildings, different from the thousands of regular church houses of worship scattered over the earth, are unique in purpose and function from all other religious edifices. It is not the size of these buildings, or their architectural beauty that makes them so. It is the work that goes on within their walls.

In contrast the affidavit of Sharon Isom states:

[the Mormon temple] is not considered to be a trademark or religious symbol that is synonymous with that church or its beliefs, it is noted for its striking beauty and nineteenth century architecture and is more likely to be identified with the history and scenery of southwest Utah than anything else.

*Foremaster,* 655 F.Supp. at 849. Karl Brooks' affidavit states that the temple "necessarily plays a central role in any consideration of the area's history, culture, roots and tradition whether that consideration be secular or otherwise." *Id.* at 849.

There is a genuine issue of material fact as to whether the depiction of the temple in the context of the official St. George logo conveys primarily a message of governmental endorsement and advancement of the Mormon religion.

REVERSED AND REMANDED FOR A CALCULATION OF ATTORNEYS FEES AND REMANDED FOR A DETERMINATION OF THE PRIMARY EFFECT OF THE LOGO. FOREMASTER IS ALLOWED HIS COSTS ON THIS APPEAL.

APPENDIX A