Diane Aurelia BURTON; Dawneane
Ferry Munn, Appellants,

v.

CENTRAL INTERSTATE LOW–LEVEL
RADIOACTIVE WASTE COMPACT
COMMISSION, Appellee.

No. 93–2175.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1994.

Decided May 2, 1994.

Charles D. Hahn, Auburn, NE, for appellants.

Alan Peterson and Gregory S. Heier, Lincoln, NE, for appellee.

Before MAGILL and LOKEN, Circuit Judges, and EISELE,* Senior District Judge.

MAGILL, Circuit Judge.

Diane A. Burton and Dawneane F. Munn (Appellants) appeal the district court's[1] order dismissing their suit against the Central Interstate Low–Level Radioactive Waste Commission (Commission) for lack of standing under Federal Rule of Civil Procedure 12(b)(6). We affirm.

The Commission is a legal entity that was formed pursuant to the Central Interstate Low–Level Radioactive Waste Compact (Compact). Nebraska and four other states are parties to the Compact, which Congress approved in 1986. The purpose of the Compact is to provide for the management of low-level radioactive waste, to distribute the obligations of disposing of such waste among the member states, and to protect the health and safety of the citizens and the environment. The Commission is charged with carrying out the Compact's purposes.

Appellant Burton is an elector of the directors of the Nebraska Public Power District (NPPD) and the Omaha Public Power District (OPPD). Appellant Munn is an elector of the directors of NPPD and a rate-

---

* The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska.

payer and elector of the directors of the Lincoln Electric System (LES). Appellants brought this suit in 1992, alleging that the Commission unlawfully taxes the public power entities, and adopted bylaws and rules, in violation of the Compact and Appellants' constitutional rights. They seek a declaratory judgment and injunctive relief. The Commission moved to dismiss Appellants' amended complaint under Rule 12(b)(6), arguing that Appellants lack standing to bring the suit. The district court agreed and granted the Commission's motion. Appellants timely appeal.

Plaintiffs must adequately allege standing to bring their cases in federal court. In order to establish standing under Article III, a party must allege (1) an injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted). Appellants bear the burden of establishing these three elements. *Id.* We review de novo whether a complaint should be dismissed for lack of standing, construing the allegations of the complaint, and the reasonable inferences drawn therefrom, most favorably to the plaintiff. *Cf. Hilton v. Pine Bluff Pub. Sch.,* 796 F.2d 230, 231 (8th Cir.1986).

Appellants allege that the Commission illegally taxes NPPD and OPPD for the right to dispose of low-level radioactive waste (LLRW) in order to fund its administrative budget. They claim that they are injured because, as electors of NPPD, OPPD, and LES,[2] they have a "direct and vested interest in the economic well-being of those public power entities." Appellants' Br. at 5. The Commission's illegal taxes, they assert, are "used to subsidize [its] administrative budget. To the extent that such subsidy diminishes the total revenues of NPPD, OPPD,

and LES, the electors and ratepayers are less well off." *Id.* at 8.

Appellants have failed to allege an injury in fact—a "concrete and particularized" invasion of a legally-protected interest—within the meaning of Article III. *Lujan,* —— U.S. at ——, 112 S.Ct. at 2136 (citations omitted). They claim that, as electors of the public power entities, they have an "ownership interest" in such entities because Nebraska law provides that the entities may not sell or encumber certain assets without the approval of sixty percent of the electors voting on the proposed transaction. Appellants' Br. at 6. Thus, they assert, the Commission's allegedly illegal taxing of NPPD and OPPD is tantamount to taxing Appellants themselves. We disagree. The Commission imposes its taxes on NPPD and OPPD, not on Appellants. We discern only the most attenuated connection between the Commission's taxes and Appellants' interests; indeed, Appellants do not explain how the fact that NPPD and OPPD are obligated to pay the taxes affects Appellants' rights in any concrete or particularized way. The Constitution requires more than Appellants' nebulous claims that they are "less well off" when NPPD and OPPD pay the LLRW taxes. *Cf. Lujan,* at ——, 112 S.Ct. at 2139 (explaining that "[s]tanding is not 'an ingenious academic exercise in the conceivable'" (quoting *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973))).[3]

For the same reason, Appellants have failed to allege any Article III injury because of the Commission's bylaws and rules. Appellants complain that the bylaws and rules direct the Commission to spend its budget in illegal ways and that they give Commission employees broader authority than the Compact allows. As a result, Appellants claim,

**2.** Appellants do not allege that the Commission taxes LES. They claim, however, that NPPD in effect passes the tax on to LES, which purchases electricity from NPPD, in the form of higher LLRW disposal costs.

**3.** Appellants cite *Foremaster v. City of St. George,* 882 F.2d 1485 (10th Cir.1989), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990), for support. *Foremaster* held that an electricity customer had standing to challenge a

credit that a utility gave to a Mormon temple on its electric bill. *See id.* at 1486–88. *Foremaster* is inapposite because the plaintiff in that case purchased electric power. According to the complaint, Appellant Burton is only an elector of the directors NPPD and OPPD and is not a ratepayer. Appellant Munn is a ratepayer of LES; we consider her claim in this capacity below.

they sustain "real and direct economic injur[ies]." Appellants' App. at 112. To the extent their economic injuries relate to the public power entities' payment of the LLRW taxes, we have already rejected this argument. Moreover, merely invoking the words "direct economic injury" is not enough to allege an Article III injury. Although less specificity is required at the pleading stage than at the summary judgment stage, *see Lujan,* —— U.S. at ——, 112 S.Ct. at 2137, the complaint must contain more than bald assertions of injury to survive a motion to dismiss; it must make some effort to connect the Commission's bylaws and rules to real injuries that Appellants have suffered or will suffer. *Cf. United States v. AVX Corp.,* 962 F.2d 108, 114–15 (1st Cir.1992). Because it fails to do so, we believe that Appellants have at most alleged that the bylaws and rules affect some undefined interest of theirs in an uncertain way. This is insufficient to confer standing under *Lujan.* —— U.S. at ——, 112 S.Ct. at 2136.

We next consider the claims of Appellant Munn insofar as they differ from those of Appellant Burton. Munn claims that, as a ratepayer of LES, she suffered an injury because LES increased electrical service rates in response to the Commission's allegedly illegal taxes. That LES increased electricity rates in response to the Commission's taxes on LLRW is not by itself enough to confer standing on Munn. Although increased rates may constitute an injury that is traceable to the Commission's conduct, Munn has not alleged that the injury is likely to be redressed by a favorable decision. The complaint asks the court to "redress [Appellants'] injuries" by declaring the Commission's policies illegal and issuing an injunction preventing the Commission "from any further and future perversion of its legal duties." Appellants' App. at 93. Appellants apparently would have us take it on faith that LES, which is not a party to this action, would adjust its rates if the district court enjoined

the Commission's taxes on LLRW. The complaint, however, does not suggest how enjoining the taxes would redress Munn's injury. It does not allege, for instance, that state law obligates LES to base its rates in any way on LLRW disposal costs or that any action the court may take would affect LES's rates. Thus, it is "merely 'speculative' " here whether a favorable decision would affect the electricity rate that Munn pays. *Lujan,* at ——, 112 S.Ct. at 2136 (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 43, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976)).[4]

Finally, Appellants argue that Article IV of the Compact confers standing on them. They claim that, through Article IV, Congress "expanded standing ... to the full extent permitted by Article III of the ... Constitution." Appellants' Br. at 15. Congress, however, may not "abrogate the Art[icle] III minima: A plaintiff must always have suffered a 'distinct and palpable injury to himself,' ... that is likely to be redressed if the requested relief is granted." *Gladstone v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (citations omitted). Because Appellants have not satisfied the threshold, constitutional requirements of Article III, they do not have standing even in light of the broad "aggrieved party" language of Article IV of the Compact.[5]

In light of the foregoing, we affirm the district court's order dismissing Appellants' suit under Rule 12(b)(6) for lack of standing.

---

4. To the extent *Foremaster,* 882 F.2d at 1488, is inconsistent with our analysis of redressability, we decline to follow it.

5. Appellants do not argue that Article IV "create[s] a statutory right or entitlement the alleged

deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin,* 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975).