E. GRADY JOLLY, Circuit Judge,
joined by EDITH H. JONES, JERRY E. SMITH, BARKSDALE, EMILIO M. GARZA[1] and DeMOSS, Circuit Judges, dissenting on the question of standing:
Article III of the Constitution requires a plaintiff to have standing to litigate; ab *474 sent standing, we have no constitutional authority to consider the controversy. Here, the sole component of standing at issue is that of “injury in fact.” The record demonstrates the following indisputable facts: (1) the complaint contains no allegation of an injury; (2) the plaintiffs’ response to BISD’s motion to dismiss for lack of standing contains no allegation of an injury; (3) the summary judgment record contains no evidence of an injury; and (4) the plaintiffs failed to articulate any argument to the district court that they have suffered an injury. Yet, mindful of these facts, a majority of the members of this court are willing to confer standing on the Does despite the Supreme Court’s clear command in Lujan:
The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]. Since they are not mere pleading requirements but rather an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.... In response to a summary judgment motion, however, the plaintiff can no longer rest on such “mere allegations,” but must “set forth” by affidavit or other evidence “specific facts,” which for purposes of the summary judgment motion will be taken to be true.
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). Further, the Supreme Court has emphasized that there is no “sliding scale of standing” that would apply a different standard to an Establishment Clause case. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 484, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Instead, the same stringent requirements of standing apply regardless of the origin or nature of the right sought to be vindicated. Id. Consequently, because the plaintiffs have clearly, unequivocally, and indisputably failed to carry their burden of demonstrating that this case presents a “case” or “controversy” under Article III of the Constitution, I respectfully dissent.
Valley Forge is the only Supreme Court opinion fully to address standing in the context of a challenge to a state action under the Establishment Clause. 454 U.S. at 464, 102 S.Ct. 752.[2] Valley Forge *475 makes the following salient points: (1) “Article III of the Constitution limits the ‘judicial power’ of the United States to the resolution of ‘cases’ and ‘controversies.’ ” Id. at 471, 102 S.Ct. 752. (2) In the light of this “bedrock requirement, this Court has always required that a litigant have ‘standing’ to challenge the action sought to be adjudicated in the lawsuit.” Id. (3) “The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show ‘injury in fact’ resulting from the action which they seek to have the court adjudicate.” Id. at 473, 102 S.Ct. 752 (emphasis added). (4) “The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.” Id. at 477, 102 S.Ct. 752 (citations omitted). (5) Focusing on the requirement of “injury in fact, ... citizens generally [can] not establish standing simply by claiming an interest in governmental observance of the Constitution, [they must] set forth instead a particular and concrete injury to a personal constitutional right.” Id. at 482, 102 S.Ct. 752. Drawing on these principles, the Valley Forge Court stated:
Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequences presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. Ill, even though the disagreement is phrased in constitutional terms. It is evident that respondents are firmly committed to the constitutional principle of separation of church and state, but standing is not measured by the intensity of the litigant’s interest or the fervor of his advocacy. That concrete adverseness, which sharpens the presentation of issues, is the anticipated consequence of proceedings commenced by one who has been injured in fact; it is not a permissible substitute for the showing of injury itself.
Id. at 485-86> 102 S.Ct. 752. Thus, the Court held, because “we simply cannot see that respondents have alleged an injury of any kind,” they lack standing to bring the current litigation. Id. at 487, 102 S.Ct. 752.
Focusing on the record in this case — and mindful of where the burden of proof lies — the plaintiffs have failed utterly to identify and prove a “particular” and “concrete” injury resulting from the implementation of the Clergy in Schools Program. The reason — indeed the wisdom — for the Supreme Court’s insistence that the plaintiffs prove a concrete, palpable injury is best illustrated by the confusion among the members of the court in actually determining the injury sustained by the Does. Throughout the briefing, opinions, and discussions in this case, injury has been an exceedingly elusive target.[3] The panel initially identified the injury suffered by the Does’ in these words:
[T]he Doe children attend schools in which the program operates, and they are continually at risk of being selected *476 by BISD administrators, without advance notice and without parental consent. ... The Does are not simply claiming that the Constitution has been violated in some distant place, with personal injury predicated on having been aware of or having observed conduct with which they disagree. Quite to the contrary, the Does leave home every morning of the school year to attend schools in which the program is ongoing. This Damoclean threat removes the Does’ claim from the realm of generalized grievances and provides the degree of “concrete adverseness” necessary for the adjudication of constitutional issues.
Doe v. BISD, 173 F.3d 274, 283-84 (5th Cir.1999).
This judge-created injury, however, proved to be less than persuasive to a majority of the members of this court— although it now appears that Judge Wiener has returned to it in his dissenting opinion.[4] During the course of the further briefing, arguing, and consideration of this appeal, the injury has been re-characterized several times. For example, one attempt to describe the injury was articulated as “a Catch-22 avoid-avoid dilemma of having to choose, instanter and without parental consultation, between participating in the unconstitutional Program or declining to do so and thereby subjecting himself to the potential opprobrium of his teachers and peers.” I make this reference simply to illustrate the imprecision of actual injury that results when the plaintiffs themselves fail to identify and prove what particular injury (or threat of injury) they have suffered.
Now, undaunted by past failures, Judge Higginbotham has recast the Does’ injury once again — again without record evidence to support it.[5] According to Judge *477 Higginbotham, the Does’ injury is the denial of access to the “full curriculum offered by the school”:
There is little doubt that limiting access to the full curriculum offered by the school would injure these students.... Opportunities for counseling and mentoring services are a needed and valued component of public education. The District supported this mentoring program with its money and resources. At bottom, the claim is that the program unconstitutionally prefers religion over non-religion, that the students cannot participate in the school’s offered program without taking part in an unconstitutional practice. If found at trial, this works a deprivation of a student’s right not to be excluded from the benefits of a school-financed educational offering — a concrete, judicially cognizable injury.[6]
*478 This newly minted injury, however, fares little better than its predecessors when analyzed in the light of Valley Forge and Lujan. The supposed individualized injury of denial of full participation in the school’s curriculum, is, if it exists at all, remote, abstract, and nonconcrete. No Doe has ever indicated that he or she wants counseling services. The record is clear that none of the Does has ever been asked to participate in the program. No evidence exists that the Doe children will ever be selected for the program. Thus, the injury suffered by the Does cannot be the deprivation of the actual opportunity to participate in the full curriculum of the school, because none of the Does either have been selected for the program or have shown that they are potential candidates for selection.
Consequently, the injury (or threat of injury) created by Judge Higginbotham from a wanting record can be reduced to one arising from the unalleged, unproved possibility that if one of the Doe children were to be asked to participate in the Program, he or she might be compelled to refuse because of religion-based objections, and thus be denied the benefit of counseling that the particular program (Clergy in Schools) offers — a program in which he or she may not wish to participate in any event. As we have noted, because the record was not developed with this injury in mind — or for that matter with any injury in mind — the plaintiffs'have failed to carry their burden of establishing that such an injury is concrete as opposed to merely hypothetical or speculative.[7]
I stress what I have previously stated: The Supreme Court has stated on numerous occasions that the injury suffered by the plaintiff must be “an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Abstract injury is not enough.” City of Los Angeles v. Lyons, 461 U.S. 95,102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Remote threat of injury is not enough. Id. “The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct.... ” Id. Stated differently, the Supreme Court has “emphasized repeatedly, [the injury] must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.” Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (citations omitted).[8] Further, the Su *479 preme Court has made clear that the burden of establishing the presence of such a concrete and palpable injury falls squarely on the shoulders of the plaintiff. See Lu-jan, 504 U.S. at 561, 112 S.Ct. 2130. It is incontrovertible on the record in this case — and neither Judge Higginbotham nor Judge Wiener denies this fact — that the plaintiffs have failed, completely and totally, to offer allegations or proof of an injury.
Finally, it is important to note that my disagreement with the majority of the members of this court is not that the plaintiffs could have under no set of circumstances alleged and offered sufficient evidence of “injury in fact.” Instead, my disagreement is solely that the plaintiffs in this case have failed even to allege — much less offer any proof of — any injury suffered as a result of attending schools that participate in the Clergy in Schools Program. Consequently, because a majority of the members of this court, without citing any authority that would permit them to do so, are willing to create an injury when none has been alleged and proved, I must respectfully dissent.

. Judge Garza would also hold that the Does lack standing for the reasons stated in his *474 panel dissent. See Doe v. Beaumont Indep. Sch. Dist., 173 F.3d 274, 300-01 (5th Cir.1999)(Garza, J., dissenting).

. Although the Supreme Court did not expressly address the issue of standing in Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000), its most recent pronouncement on the Establishment Clause, one could point to language in the Court’s opinion to argue that the "mere passage” of SFISD's unconstitutional policy caused injury to the plaintiffs. Santa Fe, 120 S.Ct. at 2281. Based on a few sentences in the Santa Fe opinion, it is arguable, then, that the Court has lowered the threshold for standing in Establishment Clause cases. Yet we cannot blithely assume that the Court intended to blur the fundamental distinction between the alleged constitutional violation and the "injury in fact” that results from the constitutional violation. The Supreme Court has unequivocally stated that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.” Rodriguez de Quijos v. Shearson/American Express, Inc., 490 U.S. 477, 484-85, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); see also Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 120 S.Ct. 1084, 1096, 146 L.Ed.2d 1 (2000)(stating that the "Court does not normally overturn, or so dramatically limit, earlier authority sub silentio”); Williams v. Whitley, 994 F.2d 226, 235 (5th Cir.1993)(stating that "absent clear indication from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled sub silentio merely because its reasoning and results appear inconsistent with later cases”). Consequently, our court is bound by the principles of standing established by the Court in Valley Forge and Lujan.

. In their appellate brief, the plaintiffs — addressing injury for the first time — allege that they have standing "both as private litigants and as taxpayers." Specifically, the plaintiffs allege:
Because BISD implements the "Clergy in Schools” program in their children’s schools and because their children are subject, at any time, to being designated by BISD to receive counseling from the Clergy, Appellants have established actual and/or threatened injury traceable to BISD's conduct. Additionally, because BISD expends public funds on the "Clergy in Schools” program, Appellants have standing, as taxpayers, to challenge BISD’s conduct.

. This judge-made injury is even less plausible in the light of the evidence regarding the adoption of a parental consent policy. At oral argument before our en banc court, BISD was directed to supplement the record with evidence of the new consent policy. In response, BISD submitted various items of evidence including the affidavit of a program coordinator stating that each school is now required to obtain parental consent for each student who participates in the program. Further, it appears that this policy has been implemented by at least five of the BISD schools.
Before leaping to the unsupported conclusion that standing exists because of the "Da-moclean threat" that hangs over the Does "every morning of the school year” and proceeding to ñnd a violation of the Establishment Clause, the case should at least have been remanded to the district court for a determination of whether the injury proclaimed by Judge Wiener actually exists.before spending more than a year to produce a wholly fractured decision on the substantive constitutional issue. See e.g., Matthews v. Marsh, 755 F.2d 182, 183-84 (1st Cir.1985)(remanding in the light of new evidence to avoid constitutional question); Concerned Citizens of Vicksburg v. Sills, 567 F.2d 646, 650 (5th Cir.1978)(remanding in the light of intervening events so district court could determine if federal jurisdiction still existed); Korn v. Franchard Corp., 456 F.2d 1206, 1208 (2d Cir.1972)("[W]hen circumstances have changed between the ruling below and the decision on appeal, the preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances.' ’).

. It should be emphasized that contrary to Judge Higginbotham's assertion in note 13, there is no evidence in the record that alleges that the Doe children wanted to participate in the Clergy in Schools Program, or that as a result of the program's "religious content,” they have been injured or threatened with injury. The evidence that Judge Higginbotham struggles to construe as supporting his judge-created injury is (1) the correspondence sent by the Doe parents to the BISD before filing suit that indicated that lay officials should participate in the Program, and (2) the testimony of one parent and three affidavits of other parents that were attached to the Does’ response to BISD’s motion for summary judgment that raise objections to how the program was being conducted (e.g., "I believe the Clergy in Schools program should be broadened to include people from other walks of life;” "I am particularly concerned that BISD has not notified me that this program was being administered;” and "I’m simply asking one thing, and that is to do something to redefine, to redevise this program where ... it would include other professionals and not focus on religious leaders”). Neither the letters nor the evidence *477 attached to the Does’ response to BISD’s motion for summary judgment indicated whether the Doe children wanted to participate in the program — or for that matter, in any counseling program — or that the Doe children were in some way being injured as a result of the program's "religious content.” Consequently, it is hard to imagine how Judge Higginbotham can find any support for his alleged injury in these portions of the record.
Judge Wiener's dissenting opinion again returns to Greek mythology to create a Damo-clean-like injury sufficient to convey standing upon the Does:
[T]he Does have presented ample record evidence to show that every single day that their children attend school they are subjected to the threat of a constitutional injury.... The Does ... object to their children's being forced personally to run the risk every day of being subjected to a religion-endorsing program that operates in their very own schools. This ever-present, tangible risk, faced in the very school buildings that they are compelled by law to attend, is more than sufficient to vest the Does with Article III standing, as injured parties, to bring their complaint.
This "ample record evidence” remains unidentified, a secret safeguarded from the rest of us. It does seem that some plaintiff would have at least observed this omnipresent threat that is a feature of his/her daily life. There is not, however, a scintilla of evidence in the record to suggest that any plaintiff ever felt "threatened” by the Clergy in Schools Program.
It is worth noting that the completely different arguments with respect to standing offered by Judge Higginbotham and Judge Wiener underscore the total absence of any alleged injury or proof of injury in the record. These arguments make pellucid that the different injuries asserted by them are simply judge-created.

. To conclude that the Does have suffered an injury, it is necessary for Judge Higginbotham to brush aside Supreme Court authority and to rely on three opinions of our sister circuits. After reviewing these opinions, it is still unclear where the support for Judge Higginbotham’s conclusion can be found.
In Foremaster v. City of St. George, 882 F.2d 1485, 1490 (10th Cir.1989), the plaintiff "alleged that he suffered economic injury because the subsidy [paid by the city owned power company to light a local Mormon temple at night] caused him to pay higher rates for electricity.” Id. at 1487. The court, relying on evidence in the record establishing that the plaintiff had- bought electric power from the city between 1983 and 1987, held that as a result of the city's expenditure of funds to pay for the lighting of the temple, the plaintiff had "suffered a 'distinct and palpable’ injury.” Id. at 1487-88. The court reasoned that "[t]o the extent that this subsidy diminished total revenues for the City’s Utility Department, the Utility Department and the purchasers of electricity are less well off and those purchasers may very well pay higher rates.” Id. at 1487.
In Hawley v. City of Cleveland, 773 F.2d 736 (6th Cir.1985), the plaintiffs specifically alleged in their complaint "that they 'regularly use Cleveland Hopkins International Airport' ” and that the "presence of a sectarian chapel at Cleveland Hopkins impairs [their] use and enjoyment of the public facility.” Id. at 739. The court, holding that the plaintiffs had suffered a sufficient injury to convey standing stated: "Even if [the plaintiffs] can avoid the chapel area by utilizing different concourses or stairways, this impingement on their right to use the airport is sufficient to confer standing since it would 'force them to assume special burdens’ to avoid ‘unwelcome[d] religious exercises.’ " Id. at 740; see also ACLU v. City of St. Charles, 794 F.2d 265, 269 (7th Cir.1986)(stating that the plaintiff's testimony "that she detours from her accustomed route to avoid the cross when it is lit ... is all that is needed to enable the suit to be maintained”).
Finally, in Bell v. Little Axe Indep. Sch. Dist. No. 70, 766 F.2d 1391 (10th Cir.1985), the *478 "[t]estimony in the record indicated] that other students asked the [plaintiffs] why they had not chosen to attend the meetings, asserting that they therefore must not believe in God.” Id. at 1396. Further, the plaintiffs' parents testified that "they have the right to guide their children’s religious education without interference at school.” Finally, testimony was offered that indicated that the plaintiffs’ parents were forced to remove their children from the public school they attended "because of the continuing harassment generated by the lawsuit." Id. at 1399. Thus, the court concluded that the plaintiffs "had standing to bring this lawsuit.” Id.
In each of the three cases cited by Judge Higginbotham, the plaintiffs specifically alleged that they suffered definite particularized injuries resulting from the challenged conduct. Further, in each of these cases, the plaintiffs offered evidence in support of these alleged injuries. These two critical facts are absent in the case before us where the injury is purely judge created.

. The plaintiffs have failed to offer any evidence demonstrating that the Doe children fall into any one or more of the categories that would make them eligible for selection into the Clergy in Schools Program. Although the categories are defined in very broad terms, they nonetheless identify a specific set of criteria upon which the school is to rely in identifying potential participants for the program. In the absence of evidence indicating which characteristics the Doe children possess, it is impossible to determine whether they would have ,been eligible for selection.

. The Supreme Court's most recent opinion addressing standing expressly acknowledges these principles. See Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 *479 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quoting Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130). In Laidlaw, the Court began its discussion of standing by stating: "The relevant showing for purposes of Article III standing ... [is] injury to the plaintiff.” Id. at 181, 120 S.Ct. 693. The Court then went on to outline in great detail the numerous affidavits and depositions in the record that establish the existence of an injury to the “affiants’ recreational, aesthetic, and economic interests.” Id. at 183-84, 120 S.Ct. 693. Thus, the Court concluded that ”[t]hese sworn statements, as the District Court determined, adequately documented injury in fact.” Id. at 183, 120 S.Ct. 693.