Mary Lou SCHMIDT and Darlene Stearns, Plaintiffs,

v.

Rita CLINE, Shawnee County Treasurer, Defendant.

No. 00–4138–SAC.

United States District Court, D. Kansas.

Dec. 6, 2000.

Lisa Nathanson, American Civil Liberties Union of Kansas & Western Missouri, Kansas City, MO, for Plaintiffs.

Richard V. Eckert, Office of Shawnee County Counselor, Topeka, KS, Francis J. Manion, The American Center for Law and Justice–Midwest, New Hope, KY, for Defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This first amendment freedoms case is before the court on defendant Rita Cline's motion to dismiss, or in the alternative for summary judgment, (Dk.8), and plaintiffs Mary Lou Schmidt and Darlene Stearns' motion for summary judgment (Dk.11). For the reasons set forth herein, the court finds that plaintiffs lack standing to pursue this case, that some of plaintiffs' claims are moot, that plaintiff's complaint fails to state a claim of an establishment clause or free speech clause violation, and that defendant is entitled to an award of attorneys' fees as the prevailing party.

Although both parties have asked for summary judgment, neither has complied with the applicable rules of the court for such motions and memoranda in support thereof. *See e.g.*, D.Kan. Rule 7.1, 56 .1. Further, only two documents outside the pleadings have been submitted, constituting an insufficient factual record for purposes of summary judgment. Accordingly, the court will treat defendant's motion solely as a motion to dismiss, and plaintiffs' cross motion and response solely as a response to defendant's motion to dismiss.

### Standards for Motions to Dismiss

Defendant's motion is brought pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

Dismissal of a claim under Rule 12(b)(6) is appropriate only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him to relief, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78. S.Ct. 99, 2 L.Ed.2d 80 (1957), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *see Maher v. Durango Metals, Inc.*, 144

F.3d 1302, 1304 (10th Cir.1998), and views all reasonable inferences from those facts in favor of the plaintiff, *see Intercon, Inc. v. Bell Atlantic*, 205 F.3d 1244, 1247 (10th Cir.2000). Although these rules of construction place a heavy burden on the movant, this burden is easily met in the present case.

### Relevant Facts

The facts relative to this decision are few and undisputed. Defendant Rita Cline was elected to the position of, and now serves as, the Shawnee County Treasurer. For some unspecified period of time prior to August 30, 2000, she displayed, in the offices of the County Treasurer, posters bearing the words "In God We Trust." Although not included in the record before this court, those posters are alleged to have measured 11 by 14 inches, to have had the word "God" printed in red letters larger than the black printing used for the other words thereon, and to have made a "barely visible" reference to that phrase as being the national motto. (Dk.1, Complaint, p. 4).

In April of 2000, plaintiff Schmidt contacted the defendant's office to express her concern about the posters bearing the words "In God We Trust." (Dk.1, Complaint, p. 4). When defendant returned her call, plaintiff Schmidt explained that "she is a Pagan and ... was offended by the religious message of the posters," and asked that they be removed. (*Id.*, p. 5.)

Thereafter, Cline is alleged to have written a letter to plaintiff Schmidt on defendant's official letterhead and in her official capacity which questioned plaintiff Schmidt's integrity and patriotism, criticized her religious beliefs and lifestyle, and revealed that defendant's motive for hanging the posters in question was religious. (*Id.*) No copy of any letter is included in the record before this court. Defendant is alleged to have taken certain other acts

---

1. Because no defense of qualified immunity has been raised, the court does not consider it herein.

which plaintiffs characterize as a "campaign of evangelism, proselytization, and distribution of religious propaganda" in defendant's capacity as Shawnee County Treasurer. (*Id.*, p. 6–7).

Plaintiffs brought suit on August 30, 2000, seeking only preliminary and permanent injunctive relief.[2] Although plaintiffs stated in their complaint that they would "file an additional Motion for Preliminary Injunction and Memorandum in Support of Motion for Preliminary Injunction in conjunction with the filing of this Complaint," (Dk.1, Complaint, p. 10), to date no such motion or memorandum has been filed.

After plaintiffs filed this case, the posters complained of were removed from defendant's office, and replaced by other posters. (Dk. 9 attachment, Cline affidavit). These posters, currently on display in the County Treasurer's office, include the motto, "In God We Trust," but print the word "God" in the same color and size as all other words in the national motto, and make a larger reference than did the previous posters to the fact that this is the "U.S. National Motto Passed by Congress July 30, 1956.") (Dk.9, Exh. A).

*Plaintiffs' Standing*

■ This court has an independent duty to inquire into its jurisdiction over a dispute, and the issue of standing is part of that inquiry. *Phelps v. Hamilton*, 122 F.3d 1309, 1315–16 (10th Cir.1997). To satisfy the requirements for standing for injunctive relief, plaintiff must demonstrate: 1) that he will suffer an injury in fact which is both concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) that the conduct

complained of will cause the injury alleged; and, 3) that it is likely, not speculative, that the injury will be prevented by a favorable decision. *Bear Lodge Multiple Use Ass'n v. Babbitt*, 175 F.3d 814, 821 (10th Cir.1999), *cert. denied*, 529 U.S. 1037, 120 S.Ct. 1530, 146 L.Ed.2d 345 (2000), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ It is well established that standing under the First Amendment may be predicated on non-economic injury.[3] *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 486, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). When non-economic injury is alleged, as here, the Supreme Court requires that plaintiffs be "directly affected by the laws and practices against which their complaints are directed." *Id.*, 454 U.S. at 486 n. 22, 102 S.Ct. 752 (quoting *School District of Abington Tp. v. Schempp*, 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)). No standing exists where a plaintiff claims that the Constitution has been violated, but claims nothing else. *Valley Forge*, 454 U.S. at 485, 102 S.Ct. 752 ("the psychological consequence presumably produced by observation of conduct with which one disagrees . . . is not an injury sufficient to confer standing under Art. III . . . .").

The Tenth Circuit has subsequently confirmed that standing in cases such as this requires a plaintiff to allege a direct, personal injury resulting from the challenged conduct. *See Foremaster v. City of St. George*, 882 F.2d 1485, 1490–91 (10th Cir. 1989). In *Foremaster*, the plaintiff worked

---

2. It is well established that the Eleventh Amendment bars suits in federal court for damages against states, state agencies, and state officials in their official capacities, with exceptions not applicable here. *See Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Congress did not abrogate states' Eleventh Amendment immunity in enacting 42 U.S.C. § 1983).

3. Although plaintiffs are taxpayers, and taxpayers may establish standing "when it is a good-faith pocketbook action," *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1401 (10th Cir.1992), quoting *Doremus v. Board of Education*, 342 U.S. 429, 433, 72 S.Ct. 394, 96 L.Ed. 475 (1952), it is apparent that here, as in Doremus, that "the grievance which it is sought to litigate . . . is not a direct dollars-and-cents injury but is a religious difference." 342 U.S. at 434, 72 S.Ct. 394.

in a city that displayed a logo containing a Mormon temple and was "directly confronted by the logo on a daily basis" because it appeared on city vehicles. There, the plaintiff alleged that the "visual impact of seeing that Temple on a daily basis as part of an official emblem ... has and continues to greatly offend, intimidate, and affect me." *Id.* at 1490–91.

Although the Tenth Circuit acknowledged disagreement among the Courts of Appeals about whether *Valley Forge* allowed standing to a plaintiff alleging direct injury by being exposed to a state symbol that offends his beliefs, 882 F.2d at 1490, it held that "an allegation of direct personal contact with the offensive action alone" was sufficient. Thus, it is not necessary for a plaintiff to allege that "he has altered his behavior as a consequence" of the offensive action. 882 F.2d at 1490.

*Plaintiff Stearns*

■ Here, the complaint names Darlene Stearns as a plaintiff, but reflects no contact whatsoever between plaintiff Stearns and any of the events alleged in the complaint. Instead, it merely alleges that Stearns lives in Topeka, is a member of the Board of Directors of the ACLU of Kansas and Western Missouri, and objects to defendant's acts. (Dk.1, Complaint, p. 6–7). The complaint fails to allege that plaintiff Stearns has ever seen the posters in the county treasurer's office, has ever spoken to the defendant about them or about any other matter, has ever received any communication from the defendant with or without religious content, or that the defendant has ever made any comments about her.

Further, the complaint fails to include any allegations that either plaintiff continues to suffer any emotional, psychological, spiritual, or other non-economic harm from defendant's alleged acts. Although both plaintiffs state their objection to defen-

dant's acts, "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Bear Lodge,* 175 F.3d at 821 (denying standing and dismissing establishment clause claims where plaintiffs failed to allege any personal injury suffered by them as a consequence of the alleged constitutional error.)

Plaintiff Stearns neither identifies any personal injury she suffered a consequence of the alleged constitutional error, nor alleges any direct personal contact with the offensive action. Plaintiff Stearns thus fails to demonstrate injury in fact, and lacks standing to pursue this case.

*Plaintiff Schmidt*

■ Plaintiff Schmidt alleges that she is a pagan, that she told defendant she was offended by the "religious message" of the posters, that she objects to defendant's offensive acts, and that she has had direct personal contact with such acts. Those alleged acts consist of the following: 1) three days after plaintiff complained about the posters, the defendant wrote plaintiff Schmidt a letter on her official letterhead in which defendant questioned plaintiff's integrity and patriotism, criticized plaintiff's religious beliefs, and revealed defendant's "religious motivation" for hanging the posters in question; 2) on some unspecified date(s) defendant mailed plaintiff Schmidt a tract about the Bible; 3) on some unspecified date(s) defendant made "disparaging remarks about plaintiff Schmidt's religious faith and practices"[4] in televised news interviews; and 4) defendant sent plaintiff Schmidt another letter in which she "likened herself and her official mission to those of Jesus Christ." (Dk.1, Complaint, p. 5–6).

Unlike plaintiff Stearns, plaintiff Schmidt has had some contact with allegedly objectionable acts of the defendant, largely, if not exclusively through tele-

---

**4.** It is unclear from the pleadings whether these alleged comments named or alluded to Schmidt in particular, or were instead generally about religious practices, which Schmidt now claims to participate in. The court will assume, for purposes of this motion, that Schmidt was personally identifiable from the comments allegedly made.

phone calls and letters. Plaintiff Schmidt's contact with the alleged offensive acts is less direct, more limited, more infrequent, and more avoidable than the contact of the plaintiff in *Foremaster,* however. Plaintiff Schmidt has not alleged that she has contact with the offensive acts on a daily or regular basis, or that she is likely to have such contact in the future by virtue of her employment or her status as a taxpayer, or otherwise. Further, no allegations are made that defendant's acts continue to offend, intimidate, or otherwise affect her, as the plaintiff in *Foremaster* alleged. Nonetheless, given *Foremaster's* broad holding that "an allegation of direct personal contact with the offensive action alone" sufficiently alleges direct injury, the court will not find that plaintiff Schmidt has insufficiently alleged direct injury for purposes of standing to bring constitutional claims.

Nonetheless, because plaintiffs seek an injunction, their burden is greater still. Even if plaintiff Schmidt had been subjected to past illegal conduct, this does not in itself show a present case or controversy regarding injunctive relief where unaccompanied by any continuing, present adverse effects. *See O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). An injunction is appropriate only where future conduct is at issue. " '[T]he moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.' " *Metzler v. IBP, Inc.,* 127 F.3d 959, 963 (10th Cir. 1997) quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Plaintiffs cannot obtain standing to sue for injunctive relief merely by alleging that the defendant has made negative statements about pagans in the past. See *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). A plaintiff must demonstrate standing "by specific evidentiary facts and not by mere allegations." *Phelps,* 122 F.3d at 1326. " 'It is a long-settled principle that standing alone cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record.' " *Id.,* quoting *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Plaintiffs must demonstrate that they themselves face a real and immediate threat, not a conjectural or hypothetical threat, of harm in the future.

Plaintiffs respond that defendant's offensive acts are likely to recur. Plaintiffs state that the defendant has a past pattern of so acting, as is evidenced by her alleged sending of similar letters and/or tracts to four other constituents in 1998. Plaintiffs further allege that defendant remains undeterred by the present lawsuit, because after the present suit was filed defendant sent a letter and document "primarily religious in content" to yet another non-party, and conducted a lengthy interview with a news agency relating to the posters. (Dk.11, p. 3–7). Accordingly, plaintiffs believe that absent court intervention, defendant will engage in similar acts in the future.

These assertions fail to meet plaintiffs' burden to demonstrate that they face a likelihood of future harm as a result of defendant's conduct, as is necessary to warrant injunctive relief. Allegations of defendant's acts directed toward the general public or persons other than these plaintiffs, whether years before this lawsuit was filed, or during the pendency of this suit, do not relate to the standing of these plaintiffs to maintain this suit. Plaintiffs are not bringing this case as a class action. Although they may hope that this action will aid other pagans, they are asking for relief solely as individuals. Even where a given action may cause harm to third persons, "a litigant may invoke only its own constitutional rights and may not assert rights of others not before the court." *National Council for*

*Improved Health v. Shalala*, 122 F.3d 878, 882 (10th Cir.1997). Although the court presumes for purposes of this motion that plaintiffs' assertions regarding defendant's pattern of conduct are true, those assertions relate solely to defendant's acts which were directed toward and impacted solely upon third persons, and are thus immaterial to the standing issues confronting these plaintiffs.

Here, nothing in the pleadings gives the court any reason to find that in the absence of plaintiffs' volitional contact with the defendant in the future, they are or either of them is likely to have any direct contact with the defendant or the posters, let alone suffer any injury in fact from her acts. Under these circumstances, the sole threat of future harm to plaintiffs is hypothetical, not real and immediate.[5]

Further, plaintiffs have failed to show that it is likely that any such future harm will be prevented by a favorable decision. It is difficult to imagine what form the plaintiff's envision the requested injunction would take. An order prohibiting defendant from referring to her personal religious beliefs may raise its own novel issues of constitutionality to the extent it would constitute a prior restraint on defendant's free speech. *See Cummins v. Campbell*, 44 F.3d 847, 853 (10th Cir.1994) (quoting *O'Connor v. City and County of Denver*, 894 F.2d 1210, 1220 (10th Cir.1990)) ("governmental action constitutes a prior restraint when it is directed to suppressing speech because of its content before the speech is communicated."); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (employees cannot be forced to relinquish their First Amendment rights simply because they have received the benefit of public employ-

ment). Plaintiffs thus lack standing to pursue this case, as pled.

*Mootness*

Even if plaintiffs had standing to maintain this action, defendant contends that to the extent plaintiffs' claims are based upon the posters removed from the defendant's office, such claims are moot. The court agrees.

The mootness doctrine questions this court's subject matter jurisdiction.

When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's references to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir.2000). The court thus refers to the evidence[6] in resolving this motion to dismiss, without converting the motion to a summary judgment motion.

Plaintiffs ignore the mootness issue, at their peril. *See* Dk. 11. "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—*i.e.*, where the controversy is no longer live and ongoing." *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir.1999), *quoting Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir.1994). "The constitutional mootness doctrine is grounded in Article III's requirement that federal courts only decide

---

**5.** Here, without changing their behavior as a consequence of defendant's action, the plaintiffs can fully participate as citizens in this county without ever seeing the posters in the county treasurer's office, or having any contact with the defendant whatsoever. This situation is therefore distinguishable from that in Foremaster.

**6.** The evidence before the court consists solely of defendant's affidavit and a copy of the poster now on display in the county treasurer's office. See Dk. 9, attachments.

'actual, ongoing cases or controversies.'" *Phelps,* 122 F.3d at 1326 (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)). "[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Yellow Cab Coop. Ass'n v. Metro Taxi, Inc.,* 132 F.3d 591, 594–95 (10th Cir.1997) (quotations omitted).

It is undisputed that defendant caused the posters complained of in the complaint to be removed from her office on September 9, 2000, and replaced them with other posters. The posters displayed currently in the County Treasurer's office do not show the word "God" in any different color or size than the other words in the national motto, and make a large and clear reference to the fact that this is the "U.S. National Motto Passed by Congress July 30, 1956".) (Dk.9, Exh. A). These distinctives appear to be those which were offensive to the plaintiffs, as stated in the complaint. Accordingly, to the extent that plaintiffs' claims are based upon the form of the word "God" as it appeared on the posters originally on display, or are otherwise based on posters which are no longer being displayed, plaintiffs' claims are dismissed as moot.[7]

*Merits of Plaintiffs' Claims*

Even if the plaintiffs had established standing, and no issues were moot, defendant alleges that plaintiffs' complaint fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6).

7. An exception to the mootness doctrine arises in cases which are "capable of repetition, yet evading . review." *Southern Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 729 (10th Cir.1997). Plaintiffs do not argue, and the court does not find, that this case falls within this narrow exception to mootness.

8. No claim has been made under the free exercise clause of the First Amendment.

9. Plaintiffs fail to incorporate the factual assertions of their complaint into their claims, see Dk. 1, p. 9, but even if the factual asser-

Plaintiffs' claims are brought pursuant to the First Amendment, which provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble; and petition the government for a redress of grievances.

Plaintiffs have brought two claims: one alleging a violation of their free speech rights, and one alleging a violation of the establishment clause.[8] These will be addressed in turn.

*Free Speech*

■ Plaintiffs' allegations regarding the violation of their First Amendment free speech rights are no model of clarity.[9] As stated in the complaint, plaintiffs allege solely that defendant violated this clause by "subjecting them to criticism and humiliation ... in her capacity as a government official, in response to their personal expression of their religious beliefs." (Dk.1, Complaint, p. 9). The court cannot tell whether defendant Cline is alleged to have violated the plaintiffs' free speech rights by saying or writing something about them to someone at some unspecified time and place,[10] or whether plaintiff's free speech claim arises from some other alleged acts of the defendant.

Plaintiffs' conclusory allegation of a free speech violation falls far short of stating any claim under the First Amendment. *See Ford v. West,* 222 F.3d 767, 773(10th Cir.2000) (holding plaintiff's conclusory allegations insufficient to state a First

tions are read together with the claims, the nature of plaintiffs' free speech claim remains amorphous.

10. Here, plaintiffs appear to complain that defendant's statements about them were critical and humiliating, not that their own right to speak has somehow been infringed. Similar claims are traditionally brought not as free speech claims, but as defamation claims, where the statements of fact are false, and other elements are met.

Amendment claim); *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1270 (10th Cir. 1989) (same). Nor do defendant's actions complained of elsewhere in the complaint rise to the level of a Free Speech violation. No allegations are made that defendant has ever attempted to control, compel, chill, deny, or otherwise restrict or inhibit in any manner whatsoever the content, form, time, place or manner of any speech by either plaintiff. Compare *American Target Advertising Inc., v. Giani,* 199 F.3d 1241 (10th Cir.2000). "Where a chilling effect is speculative, indirect, or too remote, finding an abridgment of First Amendment rights is unfounded." *United States v. Harriss,* 347 U.S. 612, 626, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

Nor have any allegations been made that defendant somehow illegally retaliated against the plaintiffs, or either of them, for any protected speech engaged in by either plaintiff. Compare *Lee v. Nicholl,* 197 F.3d 1291 (10th Cir.1999). There is no alleged employment, contractual, or other relationship between the plaintiffs and the defendant except that of resident taxpayers and elected public official, respectively. No allegations have been made that defendant denied or restricted plaintiffs' speech, or took adverse action against them because of their speech.

To prevail on a 42 U.S.C. § 1983 claim, plaintiffs must show that someone, acting under the color of law, statute, or ordinance, deprived them of a right, privilege, or immunity secured by the constitution. Construing the pleadings in the light most favorable to plaintiffs fails to show either a potential or actual deprivation of their free speech rights. Plaintiffs appear to believe that they are free to contact a public official to voice their own religious or anti-religious views, but that the public official's response to them cannot include religious content without violating the plaintiffs' free speech rights. Yet plaintiffs have cited no authority to the court to support this proposition. Plaintiffs have not directed the court to any case in which acts similar to those alleged here by a public official have been held to violate any constituent's free speech rights, nor has independent research revealed any. Accordingly, plaintiffs have failed to state a claim regarding the free speech clause.

*Establishment Clause*

 Plaintiffs allege that defendant's acts constitute an establishment of religion, as prohibited by the first amendment. In support of this claim, plaintiffs cite *American Civil Liberties Union of Ohio v. Capitol Square Review and Advisory Bd.,* 210 F.3d 703 (6th Cir.2000). (Dk.11, p. 8). Despite the obvious fact that this court is not within the jurisdiction of the Sixth Circuit, plaintiffs omit the crucial fact that this case was vacated over three months before plaintiffs filed their brief. *See American Civil Liberties Union of Ohio v. Capitol Square Review and Advisory Bd.,* 222 F.3d 268 (6th Cir.2000) (granting rehearing en banc, and noting that "the effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this court.") Cases which are vacated are rendered void, and can have no effect. Accordingly, even if this court were within the Sixth Circuit instead of the Tenth, the case relied upon by plaintiffs cannot lend any support to their claims.

The remainder of plaintiffs' brief, Dk. 11. p. 9–13, consists of nothing but quotations of mere dicta, which plaintiffs should know is not binding precedent.[11] *See Nephew v. City of Aurora,* 766 F.2d 1464,

---

11. Were the battle one of mere dicta, defendant's position could be just as easily supported as plaintiffs', by a host of Supreme Court pronouncements. *See, e.g., Zorach v. Clauson,* 343 U.S. 306, 313–14, 72 S.Ct. 679, 96 L.Ed. 954 (1952) ("We are a religious people whose institutions presuppose a Supreme Being ... "); *Allegheny County v. ACLU,* 492 U.S. 573, 657, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (Kennedy, J., dissenting) ("Government policies of accommodation, acknowledgment, and support for religion are an accepted part of our political and cultural heritage.").

1466 (10th Cir.1985). Although establishment clause analysis has undergone a barrage of change in recent years, creating a "morass of inconsistent Establishment Clause decisions," 132 F.3d 542 at 560, plaintiffs make no attempt to articulate any establishment clause elements, to determine which establishment clause test controls the issue, to show how the facts relate to the applicable test,[12] or to make any analysis whatsoever of this issue.

Further, none of the four cases whose dicta is cited by plaintiffs actually supports plaintiffs' unstated but underlying assertion that a public official violates the establishment clause by communicating personal, religious beliefs to a constituent in response to a communication from that constituent. Rather, the cited cases deal solely with issues which are not raised here (such as school prayer and religious tests for holding public office) and which are not alleged to be analogous to those which are raised here. *See Engel v. Vitale*, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962); *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); *Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000).

Plaintiffs blatantly ignore the fact that binding precedent exists on a fundamental issue presented in this case. The Tenth Circuit has squarely, unambiguously, and recently held that the national motto "In God We Trust" does not constitute an establishment of religion under either the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)[13], or the more recent endorsement test[14] set forth in *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993). *Gaylor v. United States*, 74 F.3d 214 (1996).

In Gaylor, the Tenth Circuit held that the national motto has a secular purpose, symbolizes the historical role of religion in our society, fosters patriotism, and expresses confidence in the future; that its primary effect is not to advance religion; and that it "does not create an intimate relationship of the type that suggests unconstitutional entanglement of church and state," easily meeting the requirements of the Lemon test. 74 F.3d at 216. Further, the Tenth Circuit held that a reasonable observer, "aware of the purpose, context, and history of the phrase "In God we trust" would not consider its use . . . to be an endorsement of religion." 74 F.3d at 217.

It would be reversible error for this court to ignore the Gaylor case, as plaintiffs do. Here, as in the controlling Gaylor case, the "inquiry is not about the perceptions of particular individuals or saving isolated non-adherents from the discomfort of viewing symbols of faith to which they do not subscribe." 74 F.3d at 217, quoting *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 778, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (J. O'Connor,

---

**12.** The Supreme Court's own division over how to apply the Establishment Clause to government action that expresses or affirms religious sentiments is reflected by decisions generating multiple separate opinions, reflecting at least several different positions. *See, e.g., Lee v. Weisman*, 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) and *County of Allegheny v. ACLU*, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (nine separate opinions, reflecting at least four different positions).

**13.** The Lemon test requires that, in order to be valid under the establishment clause, the act must (1) have a secular purpose, (2) have a primary effect that neither advances nor inhibits religion, and (3) avoid excessive government entanglement with religion. 403 U.S. at 612–13, 91 S.Ct. 2105.

**14.** Under this test, a government practice endorses religion when "the reasonable observer" would view the practice as an endorsement. *Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (plurality opinion). *See Lynch v. Donnelly*, 465 U.S. 668, 687–94, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984).

concurring). Thus the fact that plaintiffs were offended by defendant's acts fails to bring their case within any known first amendment analysis.

The Tenth Circuit's ruling upholding the constitutionality of the national motto is no different than the ruling of every other circuit which has addressed this issue. *See Aronow v. United States*, 432 F.2d 242 (9th Cir.1970) (finding the merits of claim of unconstitutionality "insubstantial," and stating: "It is quite obvious that the national motto and the slogan on coinage and currency 'In God We Trust' has nothing whatsoever to do with the establishment of religion"); *O'Hair v. Murray*, 588 F.2d 1144 (5th Cir.), cert. denied, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979). Indeed, plaintiffs cite no case from any jurisdiction which has held to the contrary.

Here, even if Gaylor did not control the issue in this case, and this court were to independently apply the objective inquiry that Gaylor requires, the court would find that a reasonable observer, aware of the purpose, context, and history of the phrase "In God We Trust," would not consider its use on the posters currently on display in the county treasurer's office to be an establishment of religion.

Plaintiffs claim that defendant's acts, including but not limited to displaying the posters, are rendered unconstitutional because defendant allegedly harbored or expressed a "religious motive" for such acts. Plaintiffs have alleged that defendant acted with a religious purpose, but have not alleged that her acts lacked any secular purpose. Plaintiffs may intend to allege that "in spite of the existence of a legitimate secular purpose(s), the defendants' "actual" purpose in displaying the posters is to endorse ... religion. (citations omitted)." *Bauchman v. West High School*, 132 F.3d 542, 554 (10th Cir.1997) (analyzing the purpose and effect components of the refined endorsement test, together with the entanglement criterion imposed by Lemon).

Few cases have been decided based only on the purpose of the actor. As stated in Bauchman:

> the Court rarely has decided cases based solely on the purpose component. *See Jaffree*, 472 U.S. at 75, 105 S.Ct. at 2499–500 (O'Connor, J. concurring). When it has, the overriding religious purpose of the government action has been obvious, leaving little need to elaborate on the appropriate scope of the purpose inquiry. (citations omitted).

132 F.3d at 552.

This case is nothing like the few in which the Supreme Court has found acts to violate the establishment clause due to motive of the actor alone. (Compare *Wallace v. Jaffree*, 472 U.S. 38, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (examining school prayer); *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980) (reviewing statute requiring posting of copy of Ten Commandments on walls of each public school classroom); *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968) (examining statutes forbidding the teaching of evolution in public schools); *School Dist. of Abington Tp., Pa. v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (examining requirement of Bible reading at school); *Engel v. Vitale*, 370 U.S. 421, 424–425, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962) (examining requirement of school prayer)).

The Supreme Court's decisions "have recognized a distinction when government-sponsored religious exercises are directed at impressionable children who are required to attend school, for then government endorsement is much more likely to result in coerced religious beliefs. (citations omitted)." *Wallace v. Jaffree*, 472 U.S. 38, 81, 105 S.Ct. 2479, 86 L.Ed.2d 29, (1985) (J. O'Connor, concurring). None of the underlying concerns which have mandated special vigilance in preventing religious establishments in public schools, i.e., the impressionability of young students, compulsory attendance laws that make students a captive audience, and the role of

public schools in inculcating democratic ideals, is present here. The allegation that the defendant had a religious purpose for her acts, although relevant to the "purpose" inquiry of establishment clause analysis, is far from sufficient, by itself, to show a violation of that clause under the circumstances of this case.

Plaintiffs further complain that the content of the statements [15] defendant made about her religion, and/or critical of their religion, violates the establishment clause. Here, as with plaintiffs' other complaints, plaintiffs have not attempted to show how such conduct, either by itself or in conjunction with the posters, is actionable.[16] Plaintiffs have cited no support for their position that defendant's posting the national motto in the county treasurer's office and making the alleged religious comments and/or criticisms either coerces [17] adult constituents into supporting or participating in religion, or otherwise establishes religion in violation of the constitution. See 132 F.3d at 562 (affirming dismissal of establishment clause, free speech, and other claims under § 1983 where Jewish student alleged that music teacher's conduct in choosing explicitly Christian religious music and Christian religious sites for performance of high school choir was motivated by a religious purpose, but failed to demonstrate a real constitutional threat).

Accepting plaintiffs' well-pleaded facts as true and construing them in their favor, the court finds that plaintiffs have not alleged facts which, if proven, would entitle them to relief on the merits of their establishment clause claim.

### Attorneys' Fees

 Defendant has requested [18] an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b), which provides that the court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The defendant is unquestionably the "prevailing party" in this proceeding, based upon the court's ruling that plaintiffs lack standing to pursue this case, that some of plaintiffs' claims are moot, and that the complaint fails to state a claim under which relief may be granted.

A prevailing defendant may recover an attorney's fee only where plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Glass v. Pfeffer*, 657 F.2d 252 (10th Cir.1981). This is a "stringent" standard which requires that "plaintiff's action must be meritless in the sense that it is groundless or without foundation" in order for an award of fees to be justified. *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). "The .fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Id.* The United States Supreme Court has found, however, "that while Congress wanted to clear the way for suits to be brought under the Act, it also wanted to protect defendants from burdensome liti-

---

15. Such statements allegedly consist of one letter to Schmidt, one Bible tract, and a news conference in which defendant may or may not have named or alluded to Schmidt.

16. Generally, the doctrine in this area focuses on some official sanction of religious activity, such as a law, other legislative activity, or pattern or practice.

17. Our constitution guarantees, at a minimum, that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which

'establishes a [state] religion or religious faith, or tends to do so.' *Lee v. Weisman*, 505 U.S. 577, 587, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (quoting *Lynch*, 465 U.S. at 678, 104 S.Ct. 1355).

18. Defendant's request was made in its brief, and not in a separate motion. This is a common practice in cases such as this, because no attorneys' fees can be awarded until after one party prevails. The court presumes that defendant's motion for attorneys' fees will be made hereafter.

gation having no legal or factual basis." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

The court finds plaintiffs' contention that posters bearing the phrase "In God We Trust" violate the establishment clause, patently frivolous without any basis in law. Plaintiff's assertion is in direct contravention of the controlling law in this jurisdiction, as well as in all others, and no reason for any modification or reversal of the existing law has been alleged. The court recognizes that plaintiffs' complaint is not premised solely on the national motto, but additionally relies on statements allegedly made by the defendant. Nonetheless, plaintiffs have made no citation to any establishment clause test, no attempt to show how such test should apply to any facts alleged, and no recitation of the elements of any such claim. In short, plaintiffs have done little, if anything, to show a factual or legal basis for their establishment clause claim.

Similarly, plaintiffs' free speech claim is so lacking in foundation that it is impossible for the court to discern which facts plaintiffs believe relate to this claim, or what law plaintiffs believe applies to it. Because plaintiffs have neither pled any elements of a free speech claim, nor provided any analysis whatsoever regarding it, nor cited any law supporting the assertion that such a claim is actionable, the court has no hesitation in finding that this claim is meritless, i.e., groundless and without factual or legal foundation.[19]

Therefore, this court will award the defendant a reasonable amount of attorneys' fees as a prevailing party in this case, pursuant to § 1988. Defendant will be given an opportunity to file a fee request, accompanied by affidavits, billing records, detailed contemporaneous statements of time and expenses, and other relevant documents, and plaintiffs will be permitted to respond thereto, at times set forth below.

IT IS THEREFORE ORDERED THAT defendant's motion to dismiss (Dk.8) is granted, and that plaintiffs' motion for summary judgment (Dk.11) is denied.

IT IS FURTHER ORDERED THAT the defendant shall file its motion and memorandum for attorneys' fees no later than January 5, 2001; that the parties shall thereafter confer regarding resolution of the fee issue; that plaintiffs shall thereafter file a response, if necessary, no later than January 22, 2001; and, that the court will subsequently determine whether a hearing on the matter will be necessary.

---

**19.** Although the court will not speculate as to the plaintiffs' motives for bringing this suit, and thus does not find that the suit was brought to harass or embarrass the defendant, the factual and legal inadequacies of the complaint and brief filed by the plaintiffs could support the conclusion that this case was brought in subjective bad faith.