Dr. Thomas O'CONNOR and Andrew
Strobl, Plaintiffs,

v.

WASHBURN UNIVERSITY, BOARD
OF REGENTS OF WASHBURN UNI-
VERSITY, and Dr. Jerry B. Farley,
individually and in his official capaci-
ty as President, Washburn University,
Defendants.

No. CIV.A. 04–4001–GTV.

United States District Court,
D. Kansas.

Feb. 26, 2004.

James E. Benfer, III, John M. Ostrowski, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, Robert J. Muise, Thomas More Law Center, Ann Arbor, MI, for Plaintiffs.

Kayden B. Howard, Kristen Aggeler Page, Stanley D. Davis, Shook, Hardy & Bacon L.L.P.—Grand, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

G. THOMAS VANBEBBER, Senior District Judge.

Plaintiffs Dr. Thomas O'Connor and Andrew Strobl ("Plaintiffs") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Washburn University, Board of Regents of Washburn University, and Dr. Jerry B. Farley (collectively "Defendants"). In their complaint, Plaintiffs allege that Defendants violated the Establishment Clause of the First Amendment by publicly displaying a statue titled "Holier Than Thou" on the campus of Washburn University in Topeka, Kansas, which Plaintiffs claim conveys an impermissible state-sponsored message of disapproval of the Catholic faith and religion.[1] Plaintiffs seek declaratory and injunctive relief to prevent Defendants from displaying the statue, as well as nominal damages. The court conducted a hearing on Plaintiffs' motion for a preliminary injunction, which the court consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). For the reasons set forth in this Memorandum and Order, Plaintiffs' requests for relief are denied.

## I. PROCEDURAL HISTORY

On January 6, 2004, Plaintiffs filed their complaint against Defendants, along with a motion requesting a temporary restraining order and a preliminary injunction enjoining Defendants from displaying the statue in question. The court held a hearing on Plaintiffs' application for a temporary restraining order on January 12, 2004, and denied the request. At that time, the court set the motion for a preliminary injunction for hearing on February 3, 2004. A two-day evidentiary hearing was held, and the parties presented evidence through witnesses, both live and by deposition, and exhibits. At the conclusion of the preliminary injunction hearing, the parties agreed, with approval of the court, that the preliminary injunction hearing be consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). Since that time, the parties have submitted supplemental briefing.

After carefully considering the arguments of counsel, as well as the testimony of witnesses, the exhibits, and the briefing submitted by the parties, the court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. The Parties

Plaintiff Dr. Thomas O'Connor is a tenured professor of biology at Washburn University. Plaintiff Andrew Strobl is a student at Washburn University and resides at the Living Learning Center, a residence hall for students located on the Washburn campus. Mr. Strobl is also the student president of the Catholic Campus Center at Washburn University. Both Plaintiffs are Roman Catholic.

---

1. Plaintiffs assert jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), 2201, and 2202.

Defendant Washburn University is a public university located in Topeka, Kansas. Under Kansas law, Washburn is established as a municipal university and is governed by its own Board of Regents. Defendant Board of Regents of Washburn University is a nine-member body that is the governing board of Washburn University and is responsible for appointing the university's president. Defendant Dr. Jerry B. Farley is the President of Washburn University. In this capacity, Dr. Farley proposes policies and makes recommendations to the Board of Regents. Dr. Farley also has the authority to sign contracts on behalf of Washburn, to approve expenditures under $25,000, and to make decisions to place or remove objects and displays of art on Washburn's campus.

### B. The Selection Process for Washburn's Outdoor Sculpture Exhibit

The statue, "Holier Than Thou," was placed on the Washburn campus in September 2003 as a part of the university's annual outdoor sculpture exhibit, and was selected for display by Washburn's Campus Beautification Committee ("CBC"). Composed of community members and Washburn faculty and staff, the CBC was formed in 1994 with the goal of making Washburn University one of the most beautiful campuses in Kansas.[2] Included in this charge is the CBC's duty to oversee the annual Washburn Outdoor Sculpture Exhibition, which provides Washburn with a diverse selection of sculptures to be displayed on campus each year. To obtain entries for the exhibition, the CBC sent out a call for entries through direct mail and advertisements in sculpture magazines. Sculptors were asked to submit photographic slides of their work together with information concerning the characteristics of each piece. When the deadline for entries had passed, the CBC employed a three-member panel, made up of art professionals, to view the entries and select up to five sculptures to be exhibited. The panel then presented the slides of the finalists to members of the CBC, including the president of Washburn University, Dr. Farley. The CBC notified the winning sculptors, who received a $1,000 honorarium, and sent them a loan agreement prepared by Washburn. The selected entrants were responsible for transporting the artwork to and from the university, while Washburn University's facilities services personnel installed the sculptures at locations throughout the campus.

In 2003, for Washburn University's Eighth Annual Sculpture Exhibition, the CBC received its highest response ever from artists. Forty-six individuals from sixteen states entered the competition, submitting ninety pieces of artwork for consideration. The five sculptures selected were to be displayed on Washburn's campus from September 2003 until July 2004.[3] The CBC accepted the panel's recommendations to exhibit the following five sculptures: "Holier Than Thou," by Jerry Boyle; "Siren," by Randy Olson; "Temporal Dialogue," by Bounnak Thammavong; "The Walking Bods," by Barrett DeBusk; and "Contortion," by Esmoreit Koetsier. Artist Jerry Boyle's sculpture "Holier Than Thou" is the focal point of this lawsuit.

### C. The Controversy Surrounding "Holier Than Thou"

On September 20, 2003, Defendants began displaying "Holier Than Thou" at a

---

2. The CBC is not a private entity. The President of Washburn University is responsible for appointing members to the CBC and may override the CBC's decisions.

3. As with the prior sculpture exhibitions, the five sculptures were not selected for a particular theme, rather as stand-alone pieces.

location between Washburn University's student union and its main administration building.[4] Jerry Boyle, a resident of Longmont, Colorado, created "Holier Than Thou" in 1990. The bronze sculpture, which stands thirty-seven inches high and twenty-seven inches wide, depicts the bust of what appears to be a bishop wearing a miter and a stole.[5] On the back of the sculpture, Mr. Boyle engraved the words "The Cardinal."[6] In its seven previous exhibitions, the CBC had printed brochures which contained photographs of that year's sculptures, background information about the artist, and a statement solicited from the artist about the particular piece of work. In an effort to print fewer brochures for the eighth annual exhibition, the CBC decided to display each artist's statement under the sculptures. Mr. Boyle's statement mounted below "Holier Than Thou" reads:

> The artist says, "I was brought up Catholic. I remember being 7 and going into the dark confessional booth for the first time. I knelt down, and my face was only inches from the thin screen that separated me and the one who had the power to condemn me for my evil ways. I was scared to death, for on the other side of that screen was the persona you see before you."

Within days of the display of "Holier Than Thou," Washburn University officials received letters, telephone calls, and e-mail messages from persons who complained that the prominent and public display of the statue conveyed a message of hostility toward the Catholic community. The main objections asserted by those offended by the sculpture are that: the bishop's miter is distorted and resembles a phallus; the statue and the accompanying statement of the artist mocks the sacrament of Penance and the teachings of the Catholic faith; and the bishop's facial expression conveys a negative, condescending look that contributes to the anti-Catholic message.[7]

President Farley, upon learning of the controversy, met with his executive staff and released a statement expressing the position of the university. The press release states, in part:

> One of the pieces on display this year has engendered much discussion. People perceive and respond to art differently based on their individual backgrounds. No one involved in the selection process or in any aspect of the Campus Beautification Committee intended for any viewers to experience pain or hurt. We all regret if this has occurred.
>
> One of the purposes of art is to engage us intellectually and emotionally. This work apparently has fulfilled that function as there is a wide variety of commentary on the piece, ranging from support to opposition.

4. The CBC scheduled the official opening of Washburn University's Eighth Annual Sculpture Exhibition for September 27, 2003. In an effort to increase attendance at the event, the CBC decided to coincide the exhibit's opening with Washburn University's Family Day.

5. A miter is the headgear worn by a bishop during religious ceremonies. A stole is the religious garment worn by a bishop during religious ceremonies.

6. Before entering "Holier Than Thou" into Washburn's competition, Mr. Boyle displayed "Holier Than Thou" at several sculpture shows, at a gallery in Georgetown, Colorado, and in the downtown area of Colorado Springs, Colorado. A second edition of "Holier Than Thou" is on permanent display at a think tank in Bath, New York.

7. A more detailed explanation of these objections is presented in the Establishment Clause analysis of this opinion.

There is no solution that will be satisfactory to everyone at this point. As a university, we should take this opportunity to create a positive educational experience. Seminars can be organized surrounding this work of art and its symbolism. Speakers could address the aesthetic elements, religious perspectives and issues facing contemporary religions. Different points of view must and can be represented so the seminars are a valuable educational opportunity for the campus and the community.

Despite this response by the university, the controversy and debate surrounding "Holier Than Thou" continued. In early October, Dr. Farley received letters from several Catholic groups, including Archbishop James P. Keleher of the Archdiocese of Kansas City, in Kansas, the President of the Catholic League for Religious and Civil Rights, and from the President of the Archdiocesan Council of Catholic Women for the Archdiocese of Kansas City, in Kansas. Each of these three letters criticized the decision to place "Holier Than Thou" on Washburn's campus, citing the anti-Catholic message that the sculpture conveyed.

Plaintiffs also expressed their dissatisfaction with "Holier Than Thou's" placement on campus. After first viewing the sculpture on September 23, Dr. O'Connor immediately spoke with Dr. Ron Wasserstein, the Vice President for Academic Affairs at Washburn University, and explained to him why he felt the statue was offensive. On October 3, Dr. O'Connor met with Dr. Wasserstein and David G. Monical, Washburn's Director of Governmental and University Relations. At that meeting, Dr. O'Connor informed Dr. Wasserstein and Mr. Monical that in order to remedy the situation, Washburn University should remove "Holier Than Thou," apologize to the Catholic community, and

admit that the university erred when it allowed the sculpture to be placed on campus. During the same time period, Andrew Strobl responded to the university's press release by publishing a letter in *The Washburn Review,* Washburn's student newspaper. In addition, Mr. Strobl co-signed a letter from the Catholic Campus Center at Washburn University. The letter, which was addressed to Dr. Farley, criticized the university for "creating an environment in which religion can be freely attacked without recourse" and requested the university to immediately remove the sculpture.

### D. Washburn University's Final Response

The CBC convened a special meeting on October 7, 2003. The purpose of the meeting was to apprise all committee members of the controversy surrounding "Holier Than Thou." The members were informed of the responses Washburn had received on a national level, as well as responses received from faculty and students. Jeanne Bertelson, chair of the CBC, stated that the CBC would support the statements contained in Washburn's press release.

On October 15, 2003, the Board of Regents of Washburn University held a regular meeting at which Washburn faculty and students, representatives from Catholic groups, and several members of the Washburn community expressed their opinions and viewpoints concerning the statue's presence on campus. At the meeting, Ms. Bertelson provided the Board with a history of the CBC and discussed the selection process for the competition. Ms. Bertelson also mentioned that when she had questioned Mr. Boyle about the sculpture's history, he had stated that there had never been any controversy prior to the placement at Washburn. Charles Engel, a member of the

Washburn Board of Regents, also discussed his concerns about "Holier Than Thou." Mr. Engel stated that: Washburn University was not an open forum as it relates to religious issues; that the university was required to remain neutral toward religion as a matter of constitutional law; and that the university was possibly violating its own equal educational and employment opportunity policies that prohibit discrimination toward several protected classes, including religion. After addressing the Board, Mr. Engel moved to remove "Holier Than Thou" and his motion was seconded. The Board of Regents decided to table the motion and address the issue at a special meeting on October 18, 2003. At the special meeting, the Board again listened to remarks of individuals in favor of and opposed to removing "Holier Than Thou" from the campus. Upon the conclusion of the discussion, the Board voted 5–2 in favor of keeping "Holier Than Thou" on Washburn's campus.

## III. CONCLUSIONS OF LAW

### A. Standing

■ As an initial matter, it is necessary to determine whether Plaintiffs have standing to bring this lawsuit pursuant to the Establishment Clause. Standing is a threshold issue and jurisdictional requisite for bringing a case in federal court. *United States v. McVeigh*, 106 F.3d 325, 334 (10th Cir.1997). "To meet the standing requirements of Article III, '[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Raines v. Byrd*, 521 U.S. 811, 818–19, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997) (quoting *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315,

82 L.Ed.2d 556 (1984) (emphasis and brackets in original)). ·

As a result of being "constantly exposed" to "Holier Than Thou," Plaintiffs maintain that Defendants have caused them "great embarrassment and indignity." In addition, Plaintiffs assert that "Holier Than Thou's" prominent location on campus has forced them to alter their regular routes of travel on campus so that they may avoid the statue's anti-Catholic message. Plaintiff O'Connor testified that his responsibilities as a Washburn professor require him to attend meetings and social events that would take him directly past "Holier Than Thou"'s location. Dr. O'Connor acknowledged that he could drive around campus and enter through the "back door" to reach his appointments, but that he refused to be treated like a second class citizen. Plaintiff Strobl testified that he must take an alternate route to evade "Holier Than Thou" to attend one of his classes, to get postings for student organizations, to reach the registrar's office, and to handle his financial affairs at Washburn's business office. Mr. Strobl stated that his alternative route takes him approximately one to two minutes longer than his more direct, preferred route.

In a footnote, Defendants argue that Plaintiffs' injuries "are purely psychological consequences of viewing 'Holier Than Thou,'" and that this "spiritual injury" is insufficient to establish standing under the Establishment clause.[8] Defendants also argue that it is not clear under case law whether Plaintiffs' claims of having to alter their routines is a sufficient injury to give Plaintiffs standing under Article III. After reviewing relevant Tenth Circuit prece-

---

8. For this proposition, Defendants rely on *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 485–86, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

dent, the court concludes that Plaintiffs have standing to assert their claims.

"Standing under the Establishment Clause may be predicated on non-economic injury." *Foremaster v. St. George*, 882 F.2d 1485, 1489 (10th Cir.1989) (citations omitted). "For Establishment Clause claims based on non-economic harm, the plaintiffs must identify a 'personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.'" *Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir.2003) (quoting *Valley Forge Christian Coll.*, 454 U.S. at 485, 102 S.Ct. 752).

In *Foremaster v. St. George*, the Tenth Circuit held that a plaintiff's "allegations of direct personal contact with the offensive action alone" was a sufficient non-economic injury to confer standing under the Establishment Clause. *Foremaster*, 882 F.2d at 1490. The plaintiff in *Foremaster* brought an Establishment Clause challenge to the depiction of a religious temple in the city logo of St. George, Utah. The plaintiff claimed that " 'the visual impact of seeing that Temple on a daily basis as part of an official emblem ... has and continues to greatly offend, intimidate and affect me.'" *Id.* In reaching its decision, the Tenth Circuit noted several decisions in the Seventh Circuit that required plaintiffs to allege a change in behavior to find standing. *Id.* (citations omitted). The *Foremaster* court, however, found the Sixth Circuit's decision in *Hawley v. City of Cleveland*, 773 F.2d 736 (6th Cir.1985), as well as its two previous decisions in *Valley Forge, Anderson v. Salt Lake City Corp.*, 475 F.2d 29, 31 (10th Cir.1973) and *Bell v. Little Axe Independent School District*

*No. 70*, 766 F.2d 1391, 1398 (10th Cir.1985) to be persuasive authority for the proposition that a plaintiff need only "allege a direct, personal injury" to satisfy the standing requirement. *Id; see Adland v. Russ*, 307 F.3d 471, 478 (6th Cir.2002) ("An Establishment Clause plaintiff need not allege that he or she avoids, or will avoid, the area containing the challenged display.").

Following *Foremaster*, the court concludes that Plaintiffs' allegations of direct, personal contact with "Holier Than Thou" provide a sufficient basis for standing under Article III. The fact that Plaintiffs also allege a change in behavior to avoid viewing the sculpture further supports this determination.

### B. The Establishment Clause

■ The First Amendment provides that "Congress shall make no law respecting an establishment of religion ...:"[9] U.S. Const. amend. I. "At its core, the Establishment Clause enshrines the principle that government may not act in ways that 'aid one religion, aid all religions, or prefer one religion over another.'" *Snyder v. Murray City Corp.*, 159 F.3d 1227, 1230 (10th Cir.1998) (quoting *Lee v. Weisman*, 505 U.S. 577, 600, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992) (Blackmun, J., concurring)). This requirement of government neutrality toward religion does not mandate "a complete absence of religious expression in public institutions." *Pryor v. Coats*, No. 99–6271, 2000 WL 147388, at *8 (10th Cir. Feb. 9, 2000). " '[I]t affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any.'" *Id.* (citation omitted).

Despite having received considerable criticism, the test set out in *Lemon v.*

9. This constitutional principle was made applicable to the states through the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

*Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) remains the framework for Establishment Clause analysis. *Summum v. City of Ogden*, 297 F.3d 995, 1009 (10th Cir.2002) (citations omitted). "Applying *Lemon*, government action does not violate the Establishment Clause so long as it (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster an excessive entanglement."[10] *Bauchman v. W. High Sch.*, 132 F.3d 542, 551 (10th Cir. 1997) (citing *Lemon*, 403 U.S. at 612–13, 91 S.Ct. 2105). *See Robinson v. City of Edmond*, 68 F.3d 1226, 1230 n. 6 (10th Cir. 1995) ("Failure to satisfy any of the three Lemon test prongs suffices to support an Establishment Clause violation."). In *Lynch v. Donnelly*, 465 U.S. 668, 687–94, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), Justice O'Connor sought to clarify the *Lemon* analysis by focusing on whether the government action endorsed religion. "Applying Justice O'Connor's refined analysis, the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message [that] 'religion or a particular religious belief is favored or preferred.'" *Bauchman*, 132 F.3d at 551(citations omitted).

As the court proceeds to analyze this case under the guidelines of *Lemon* and *Lynch*, the court observes that challenges to the Establishment Clause "are not decided by bright-line rules, but on a case-by-case basis with the result turning on the specific facts." *Glassroth*, 335 F.3d at 1288.

### i. Secular Purpose

■ "[T]he purpose component of the endorsement test should evaluate whether the government's 'actual' purpose is to endorse or disapprove of religion." *Bauchman*, 132 F.3d at 551 (citations omitted). The "inquiry into the government's purpose should be 'deferential and limited'" because courts are reluctant to attribute "unconstitutional motives to the government, particularly where [a court] can discern a plausible secular purpose." *Id.* at 554 (citations omitted). The government's articulated purpose, however, must still be "sincere and not a sham." *Edwards v. Aguillard*, 482 U.S. 578, 586–87, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987). The court must focus on the totality of the circumstances regarding the placement of "Holier Than Thou" on Washburn University's campus. *See Books v. City of Elkhart*, 235 F.3d 292, 302 (7th Cir.2000).

Plaintiffs claim that mocking the religious beliefs of Catholics and "promoting bigotry and hatred toward" Catholicism can never be a legitimate government purpose. Specifically, Plaintiffs assert that Defendants' decision to display "Holier Than Thou" on Washburn's campus undermines any legitimate educational goal. Plaintiffs argue that "Defendants were well aware" of the anti-Catholic message conveyed by the sculpture and its negative effect on Catholics in the Washburn community. In support of this position, Plaintiffs cite the letters Dr. Farley received from Catholic organizations asking Washburn University to remove "Holier Than Thou." Plaintiffs maintain that despite these requests to remove the statue, Washburn's Board of Regents voted to maintain "Holier Than Thou" and "embraced the [sculpture's] message as a meaningful contribution to the 'marketplace of ideas.'" Thus, Plaintiffs conclude, Defendants' own actions establish that

---

**10.** The court will not evaluate "Holier Than Thou" under the third prong of the Lemon test because Plaintiffs did not argue that the sculpture establishes an "excessive entanglement" between government and religion.

their actual purpose was illegitimate. The court is not persuaded by Plaintiffs' arguments.

The court agrees with Plaintiffs' statement that promoting hostility towards Catholics is not a legitimate government purpose. Plaintiffs, however, fail to demonstrate that Defendants' primary purpose in placing "Holier Than Thou" on Washburn's campus was religious. Plaintiffs' arguments focus only on the alleged message conveyed by "Holier Than Thou" and Defendants' decision to keep the sculpture on campus after people objected to its display. Plaintiffs ignore the overall context that guided Defendants' actions in bringing "Holier Than Thou" to Washburn University.

Washburn University's Campus Beautification Committee organized the outdoor sculpture exhibition to advance its primary goal of enhancing the beauty of the campus. Sculptures for Washburn University's Eighth Annual Outdoor Exhibition, like the sculptures in the previous seven exhibitions, were selected by jurors based upon the quality of the artwork and their suitability for the outdoors. Plaintiffs present no evidence that the sculptures were selected as part of a religious theme or in an attempt to communicate a religious message.[11] Furthermore, no evidence suggests that Defendants' decision to place "Holier Than Thou" at a central location on campus was predicated on any hostility towards Catholics. Greg Inkman, who provides professional support to the outdoor sculpture competition, testified that in the previous year's exhibition, a sculpture was placed in the same location

as "Holier Than Thou." Mr. Inkman stated that he moved "Holier Than Thou" closer to the sidewalk because of its smaller size; he wanted people to see the sculpture's fine details. Finally, as Defendants' brief correctly points out, the decision to mount the artists's statements occurred during the CBC's meetings in the Spring of 2003, well before "Holier Than Thou" was even selected. In prior years, the personal statements appeared only in brochures printed for the exhibition. Members of the CBC determined that they could save money by producing fewer brochures and placing the artists's statement next to his or her sculpture.

The court concludes that the outdoor art exhibit is one segment of the co-curricular activities offered at Washburn University. It functions to aesthetically enhance Washburn's campus, and as Dr. Farley testified, to broaden the educational experiences and to increase the intellectual capacities of Washburn's students. It is correct that "Holier Than Thou," unlike the other four sculptures brought to Washburn's campus, contains what may be perceived to be a religious component. But as Judge Coffey stated in his dissent in *Indiana Civil Liberties Union v. O'Bannon*, 259 F.3d 766, 775 (7th 2001): "Simply because some religious meaning is conveyed by a monument does not destroy a state's valid secular purposes for its display." Accordingly, the court concludes that the overall context and content of "Holier Than Thou"'s display sustains Defendants' articulated secular purpose, i.e., the display of a work of art. Where there is no evidence that the university has a policy of antagonism to the Catholic religion, the federal courts

---

11. In fact, section one of the loan agreement artist Jerry Boyle signed states:

"The University, for the *purposes* of fostering appreciation of the arts, bringing attention to its campus and to give artists an opportunity to display their work in public, will exhibit certain pre-selected outdoor sculptures on its campus for a twelve-month exhibition period beginning September 1, 2003 and ending August 31, 2004, or as soon after these dates as practicable." (emphasis added).

must defer to educational and artistic judgments that are not invidious. *See Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 760 (7th Cir.2001).

### ii. Primary Effect

■ "The effects prong asks 'whether, irrespective of the government's actual purpose, the practice ... conveys a message of endorsement or disapproval.'" *Foremaster*, 882 F.2d at 1491 (quoting *Lynch*, 465 U.S. at 687, 104 S.Ct. 1355). The determination of whether a government's display has the "principal or primary effect of advancing or endorsing religion" must be evaluated from the perspective of a reasonable observer, aware of the purpose, context, and history of the challenged conduct.[12] *Bauchman*, 132 F.3d at 551–52, 555; *see Foremaster*, 882 F.2d at 1491 (citation omitted) (stating that a court should consider the "particular physical setting" of the display at issue). "This is an objective inquiry, not an inquiry into whether particular individuals might be offended" by the government's actions. *Bauchman*, 132 F.3d at 555; *see Capitol Square*, 515 U.S. at 780, 115 S.Ct. 2440 (O'Connor, J., concurring) ("'[W]e do not ask whether there is *any* person who could find an endorsement of religion, whether *some* people may be offended by the display, or whether *some* reasonable person *might* think [the State] endorses religion.'") (citation omitted) (emphasis and brackets in original).

■ Plaintiffs claim that a well-informed reasonable observer would conclude Defendants' display of "Holier Than Thou" conveys an anti-Catholic message. In support of this contention, Plaintiffs rely on the expert testimony of Archbishop James Keleher and the testimony of Plaintiffs.

As the senior Catholic leader of the Archdiocese of Kansas City, in Kansas, Archbishop Keleher is responsible for teaching the Catholic faith and ensuring that others adhere to Catholic traditions. Archbishop Keleher testified to his perception of the harmful effect of "Holier Than Thou" on the Catholic community. First, Archbishop Keleher stated that the headgear worn by the bishop in "Holier Than Thou" appeared distorted and suggested a phallic symbol. He noted that miters are distinctive headgear worn by bishops with authority, and are often worn during major religious ceremonies. Miters, he asserted, are pointed at the top and have seams down the sides—not down the middle as depicted in "Holier Than Thou." Second, the Archbishop testified that Mr. Boyle's statement mocked the role of Christ in the sacrament of Penance. Specifically, the Archbishop objected to Mr. Boyle's references to "the power to condemn" and "persona" contained in the last two sentences of the caption attached to "Holier Than Thou": "I knelt down, and my face was only inches from the thin screen that separated me and the one who had the power to condemn me for my evil ways. I was scared to death, for on the other side of that screen was the persona you see before you." Archbishop Keleher explained that

---

**12.** The court acknowledges that the degree of knowledge possessed by the hypothetical reasonable observer has been the subject of considerable debate. *See e.g., Freedom from Religion Found., Inc. v. City of Marshfield*, 203 F.3d 487, 496 n. 2 (7th Cir.2000) (citing cases); Benjamin I. Sachs, *Whose Reasonableness Counts?*, 107 Yale L.J. 1523 (1998).

In *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.1996), the Tenth Circuit applied Justice O'Connor's reasonable observer standard from her concurrence in *Capitol Square Review and Advisory Board v. Pinette*, 515 U.S. 753, 772–83, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995). Accordingly, the court adheres to the precedent established by the Tenth Circuit.

in the sacrament of Penance, the priest speaks in the "persona" of Jesus. The priest is the humble instrument of Jesus, an instrument of forgiveness and reconciliation, not condemnation. Thus, he viewed the sculpture's caption as an attack on the persona of Christ and Jesus's role in the sacrament of Penance. Third, Archbishop Keleher stated that he found the title "Holier Than Thou" to be offensive because he did not consider himself any better than the person who comes before him during confession. Finally, the Archbishop objected to the bishop's facial expression because it appeared condescending and negative.

Plaintiffs, in their testimony, cited similar objections to "Holier Than Thou." Plaintiff Strobl expressed that "Holier Than Thou" communicated a message of disapproval to him and made him feel like an outsider in the community. Mr. Strobl testified that to him a priest is a servant of God's mercy, but that the sculpture's facial expression appeared as if the bishop was sitting in judgment. He also asserted that the statue's inscription contradicted the teachings of the Catholic faith, that the bishop's miter resembled a penis, and that the sculpture's central location on campus further heightened the anti-Catholic message.

Dr. O'Connor testified that for a practicing Catholic, "Holier Than Thou" is "a jab in the gut." Dr. O'Connor noted that the statue was clearly a religious symbol because it contained the inscription "Cardinal," a position not found in other religious body. Like Archbishop Keleher and Mr. Strobl, he found the bishop's miter and facial expression, as well as the sculpture's caption, to be offensive.

Based on these interpretations of "Holier Than Thou," Plaintiffs argue that an informed reasonable observer would know the following: that during the sacrament of Penance, the "persona" of the bishop is not his own, but he is in the person of Christ; that the traditional miter worn by bishops has been distorted in the sculpture to resemble a phallus; and that the caption's reference to the "persona you see before you" intentionally mocks God the Father. In addition, Plaintiffs contend that the average observer would be aware that other Catholics requested Washburn University officials to remove the sculpture because of its offensive message, but that Washburn's Board of Regents voted to keep the statue in its current prominent location. Consequently, Plaintiffs contend that the reasonable observer would conclude that Washburn University's display of "Holier Than Thou" has the primary effect of disfavoring the Roman Catholic faith. The court disagrees.

The court does not question the sincerity of Plaintiffs' beliefs. Plaintiffs' arguments, however, concentrate only on the allegedly anti-Catholic message conveyed by "Holier Than Thou" and Defendants' decision to retain the sculpture on campus. Again, Plaintiffs ignore the context, history and overall purpose behind Washburn University's display of "Holier Than Thou." *See Gaylor*, 74 F.3d at 217 (quoting *Capitol Square*, 515 U.S. at 779, 115 S.Ct. 2440 (O'Connor, J., concurring) ("The reasonable observer ... is the embodiment of a collective standard and is thus 'deemed aware of the history and context of the community and forum in which the religious display appears.'")). Based on the facts of this case, the court cannot conclude that "Holier Than Thou"'s presence on Washburn's campus would cause a reasonable observer to believe that Defendants endorsed hostility towards the Catholic religion.

The court questions the breadth of information Plaintiffs seek to impute to the average observer. *See Capitol Square,*

515 U.S. at 779, 115 S.Ct. 2440 (O'Connor, J., concurring) ("[T]he endorsement test should [not] focus on the actual perception of individual observers, who naturally have differing degrees of knowledge."). Specifically, Plaintiffs' arguments rely heavily on the knowledge a reasonable observer must possess about the Catholic religion in order to find "Holier Than Thou" offensive. As Defendants' brief points out, Plaintiffs "would engraft upon the reasonable observer in-depth knowledge and sensitivity about the Catholic faith and Catholic doctrine."[13] The testimony of Archbishop Keleher and Dr. O'Connor support this proposition. At the hearing, the Archbishop stated that "Holier Than Thou" mocked the teachings and the authority of the Catholic church, and that an informed, practicing Catholic would know this and be offended by the sculpture. On cross examination, Defendants' counsel asked Dr. O'Connor if other Catholics might view the sculpture differently. He responded that it would depend if the person was a faithful practicing Catholic or if the person was baptized and merely stated that he or she was a Catholic. The court refuses to assign to the reasonable observer a certain quantitative state of Catholicism. The court is satisfied that "a reasonable observer, without regard to a reasonable observer's degree of understanding," would not consider Washburn's display of "Holier Than Thou" as an endorsement of religion. *Freedom from Religion Found., Inc.*, 203 F.3d at 495–96.

Plaintiffs also request the court to focus on the fact that "Holier Than Thou" is prominently placed between Washburn's student union and its main administration building, with nothing to neutralize its anti-Catholic message. The court is not persuaded that a reasonable observer would perceive the distance between the five exhibition sculptures or the location of "Holier Than Thou" as a disapproval of religion. The "particular physical setting" created by Washburn's campus is comparable to an outdoor museum. A map of Washburn University indicates "Holier Than Thou" shares the campus grounds with twenty-five permanent sculptures in addition to the other four sculptures selected for the outdoor exhibition. These other twenty-nine sculptures embrace a variety of secular subjects which only mitigates any religious significance "Holier Than Thou" possesses. *See Lynch*, 465 U.S. at 692, 104 S.Ct. 1355 (O'Connor, J., concurring) ("[A] typical museum setting, though not neutralizing the religious content of a religious painting, negates any message of endorsement of that content.").

The court determines that an objective observer would recognize that Washburn University displayed several pieces of artwork on campus each year as a part of its outdoor sculpture exhibition. In an environment of higher learning on a college campus, the court cannot conclude that a reasonable observer would perceive the university's display of "Holier Than Thou" as an attack on Catholics. The fact that "Holier Than Thou" is a work of art, subject to myriad interpretations, further dilutes any religious meaning the sculpture may convey. The court holds that based upon the totality of the circumstances surrounding "Holier Than Thou's" placement on Washburn's campus, a reasonable observer would not conclude that the university's display has the primary effect of conveying a message of disapproval towards the Catholic religion.

---

**13.** Plaintiffs' supplemental brief states: "[a] *reasonably informed Catholic* would recognize and understand the anti-Catholic message conveyed by 'Holier Than Thou.'" (emphasis added).

In sum, the court concludes that Defendants' display of "Holier Than Thou" at Washburn University fails neither the purpose nor effect components of the endorsement test. Accordingly, the court determines that Defendants have not violated the Establishment Clause.

IT IS, THEREFORE, BY THE COURT ORDERED that the clerk enter judgment in favor of Defendants. Plaintiffs' requests for relief are denied.

Copies of this order shall be transmitted to counsel of record.

The case is closed.

**IT IS SO ORDERED.**